Athanase BENOIT, Jr., Appellant,

v.

POLYSAR GULF COAST, INC., Appellee.

No. 09 86 120 CV.

Court of Appeals of Texas, Beaumont.

March 12, 1987.

Rehearing Denied April 2, 1987.

Joseph H. Lobley, Houston, for appellant.

Gloria M. Portela, Chadwell & Kayser, Ltd., Chicago, Ill., Jack D. Ballard, Hutcheson & Grundy, Houston, for appellee.

## OPINION

BROOKSHIRE, Justice.

Wrongful discharge case. The Appellant pleaded that he was wrongfully terminated because the company failed to suspend him on account of excessive absenteeism for a period of three days before actually firing Appellant. Benoit conceded that the single basis for his lawsuit was this:

"Q ... Do you have any other complaints against the company besides the fact that you did not receive, technically, a suspension before you were discharged?

"A. No, sir."

Appellant also conceded that he did not have a written contract of employment.

"Q ... Mr. Benoit, you've had a chance to talk this over with your lawyer, and I want to ask you again if you had any—if you and the company entered into a written contract about how long you would be employed out there at the time you were hired?

"A No, sir, I don't have a written contract.

"Q Did you enter into one?

"A Well, we have what they call a policy over there.

"Q No, but I'm talking about a writing, a document that you signed and that the company signed.

"A No, sir, I don't have one.

"Q So, there is not a written agreement that you signed and that the company signed that concerns how long you'd work for the company; is that correct?

"A That's correct."

Appellant took the position, generally, that he had been employed and had become a permanent employee. Also, he argued that he was to have been retained in employment until his retirement age of 65. Appellant testified about the policy of his former

employer, B.F. Goodrich. On January 1, 1982, the Appellee bought the plant. Appellant argued the policy had not changed. In December of the same year, Appellant was discharged.

The question before us is whether there was any written contract or written document of employment that limited the right to terminate that employment. The Appellant argued that, once he had finished the probationary period, his employment became permanent.

Benoit stated that, once the probationary period was successfully completed, it was the usage or custom of his two successive employers, as well as all the chemical plants in the area, that these employers accepted you as:

"... an asset to the company, as to speak, that's why they hire you, because they need you. You're the one that's carrying the mail for them. So, then, you're considered a permanent employee until you're—whatever happens, you reach retirement age or perhaps, for some medical reason, you have to be retired or something."

Benoit also swore that he could quit his employment at any time by giving a 2 weeks' notice. Benoit further testified:

"Q When you began work for B.F. Goodrich, did you fill out an employment application?

"A Yes, sir.

"Q Could you say whether or not that was the only thing you signed at the time you began work for them?

"A I can't say. Can't say, to be honest.

"Q Did you have an agreement with B.F. Goodrich that you would work for a definite period of time—by that, I mean one year, two years, et cetera?

"A No, sir.

. . . .

"Q Well, I don't understand vacations; and just speaking in general, did the company have an agreement with you that you would be employed for a set length of time?

"A I can't say that they had.

"Q Did they or did they not? Could you give me a 'yes' or 'no' answer.

"A As far as I'm concerned, they did.

"Q What was the length of time that they agreed to employ you for?

"A Until I reached retirement age, which is 65.

"Q Did somebody tell you that?

"A Well, that's the general consensus there."

Eleven months before Benoit was fired, Polysar Gulf Coast, Inc., purchased the plant from B.F. Goodrich. There was an employee handbook issued by B.F. Goodrich Company as well as by Polysar. These handbooks, however, were not delivered to the individual employees but to the foremen. They were available for inspection by the employees.

Appellant is correct when he states that, under the supervisory policy and procedures of Polysar that the following was set forth:

"POLYSAR GULF COAST INC.

"Orange, Texas

"SUPERVISORY POLICY AND PROCEDURES

"Subject: ATTENDANCE

"A POLICY

"Regular attendance is expected of every Orange Plant employee. Each employee is hired to perform a full-time job and his or her performance cannot be satisfactory if there are frequent absences. Employees who establish irregular attendance will be subject to the following Corrective Action Program:

"1st offense—Counseling

"2nd offense—Written reprimand

"3rd offense—3–day suspension

"4th offense—Discharge"

The record clearly proves that, as a result of excess absenteeism, Appellant was counseled in August of 1980. The counseling resulted from the fact that, during the preceding 12 months, Benoit had been absent from work for 51.75 days or 621 hours. As a part of the counseling, the employer pointed out that plant staffing changes were necessary due to Benoit's

absenteeism. This, in turn, caused interruption in the plant's operation. The counseling to Benoit contained this:

"It is every employee's responsibility to maintain satisfactory attendance to protect their job. Please make note of this responsibility to insure *that you do not place your job in jeopardy.*

"Junior [Benoit], you had been *counseled previously on the number of emergency vacations you have taken.*" (Emphasis added)

There was further detailed counseling.

Later, in August, 1981, Benoit received a reprimand. In general, it stated that, since he had been counseled, he had missed an additional 36 days, including two extended and one intermittant illness. This absenteeism exceeded the policy of the company. The reprimand stated this:

"The corrective action for the second offense is a written reprimand. That is the purpose of this letter. You should be aware that the third offense calls for a 3–day work suspension and the fourth discharge."

▉ At the threshold, we are met with the consistent and voluminous body of Texas law concerning wrongful discharges. Basically, the Appellant must prove the 2 elements to constitute his legal standing or cause of action for a wrongful firing. Firstly, Appellant must prove that he and his employer had a contract that specifically provided and directly limited the employer's right to terminate the employment contract at will; and, secondly, that that said employment contract was in writing. Since 1888, under our fact situation, the well-established, decisional law in Texas was that employment contracts are "at will" unless the parties agreed in writing to the contrary. And the writing must, *in a meaningful and special way,* provide that the employer simply does not have the right to terminate the employment at will. In *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, no writ) we find:

" '[W]hen the term of service is left to the discretion of either party, or the term is left indefinite, or determinable by ei-

ther party, either party may put an end to it at will, and so without cause.' *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). . . ."

The second necessary element is, of course, that the agreement be in writing. The necessity of a written document flows from the statute of frauds which provides, generally, that contracts not to be completed within one year are not enforceable unless they are made into a written memorial. *TEX.BUS. & COM.CODE ANN., sec. 26.-01(b)(6)* (Vernon 1968 and Supp.1987).

▉ We decide that it is clear, from this record, that this Appellant is seeking to enforce an employment agreement that definitely provided for an employment term of greater than one year. He started working for Goodrich in 1968. He was not terminated until 1982. One of the main thrusts of his position was that he had permanent employment and, also, employment until the retirement age of 65. We decide that the statute of frauds has application to this case. *Molder v. Southwestern Bell Telephone Co.*, 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). We squarely hold that the written application for employment, concerning the probationary period, as well as the handbooks and the policy of Goodrich and Polysar, do not amount to an agreement or contract in writing that would limit Polysar from terminating Benoit at will. These writings and the understood policy cannot be construed to specifically deprive the employer of the right to terminate Benoit's employment at will. It is clear that Benoit could terminate his employment, at will, by giving a reasonably short notice. The writings involved in this case do not provide for either lifetime employment or employment to the retirement age of · 65, nor do they provide for any type of employment that cannot be terminated "at will" by either party. It is certainly a valid argument that the handbooks encourage good attendance at work but, by their nature, it is shown that the employers were and are requiring and insisting upon good attendance at work. They definitely show that excessive absenteeism is a reason for

discharge or termination. This does not limit the employer's right to terminate Appellant's employment at will.

▆▆▆▆ Appellant takes the position that he was a permanent employee or an employee to be retained in service until his normal retirement age of 65. We perceive that his work status was pursuant to a non-written policy. We hold, under this record, that an employee, after finishing the probationary period of employment, who deems himself to be a permanent employee, must prove a written contract to the effect to enforce a promise of lifetime employment. Likewise, we hold that the Employee Handbooks and policies which definitely encouraged the employees to maintain satisfactory attendance records did not result in a written employment contract *that limited the employer's right to terminate this Appellant's employment at will*. *See Vallone v. AGIP Petroleum Co., Inc.*, 705 S.W.2d 757 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd, n.r.e.); *Molder v. Southwestern Bell Telephone Co., supra.*

The promise of lifetime employment, or the promise of permanent employment, or the promise of employment until the age of 65, is that type of employment agreement or contract that must be reduced to writing to be enforceable. *Molder, supra; Hurt v. Standard Oil Company of Texas*, 444 S.W.2d 342 (Tex.Civ.App.—El Paso 1969, no writ).

▆▆▆▆ Nor does the doctrine of estoppel, such as promissory estoppel, govern the Appellant's alleged cause of action. This record is totally devoid of any proof that Polysar had promised to reduce any oral representations to an actual writing. Neither was Appellant misled nor was it misrepresented to him that the handbook and policy involved complied with the statute of frauds. Hence, promissory estoppel will not set aside the statute of frauds so as to permit the enforcement of an oral employment agreement. *Mobley v. Wenger*, 689 S.W.2d 477 (Tex.App.—Houston [14th Dist.] 1985, no writ).

We think it is clear that the Appellant's singular complaint and grievance that he failed to receive the third step of the four-step policy procedure, being the step known as "suspension", under this unusual record, was harmful to him. The facts, under this record, are particular and even peculiar. At the time the suspension would have taken place, the Appellant could not have reasonably gone to the plant to receive the same because he was ill with bronchitis, having been hospitalized for a period of time for that malady. Under this record, it was not practicable or reasonable to have sent for the Appellant and required his coming to the plant to receive the suspension of 3 days when he could not have worked that 3 days. However, shortly after he recovered from the bronchitis, before returning to work, he was in an automobile accident. The letter of termination was dated December 14, 1982. Among other things, the letter of termination contained the following sentences:

"This action is being taken because of absenteeism in excess of that allowed by the plant's attendance policy ...

"You were counseled on August 14, 1980, for unsatisfactory attendance by your general foreman, Mr. R.G. Small. Again, on June 5, 1981, Mr. A.C. Miller, the Industrial Relations Manager, and I, discussed your attendance record with you. The Company's attendance policy and the possibility of discharge were covered in detail. On August 10, 1981, Mr. R.C. Hood, your general foreman, gave you a formal reprimand because of your unsatisfactory attendance. Again, the attendance policy and the implications of continued absences were discussed with you.

"Our repeated warnings did not seem to improve the situation. In 1982, you exceeded the attendance policy on November 4. At that time, your record showed 57 hours of absences due to illness for the year. Since that time, you have recorded 72 additional hours of absences."

Although we do not decide the case on this basis, we cannot see how the assessment of a formal suspension of 3 days could have, in any manner, helped Benoit. We affirm the judgment below.

█ Benoit argues that a fraud has been perpetrated upon him, contending that the decision not to afford to him the third step of the corrective action program was a fraudulent action because this decision was not relayed to Appellant. He then argues that, had he been told this third step would not have been given, he would have taken better, necessary steps to improve his attendance or to seek alternate employment without the stigma of being terminated. But we have found that fraud does not set aside the Statute of Frauds.

In his paragraph for damages, Benoit has asked for his lost earnings and his benefits, which would have been earned had he not been discharged, along with incurred and incidental costs and inconvenience of seeking a new job. The other elements of damages, he pleads, would not have resulted had his employment not been terminated. His pleadings for injuries and damages paramountly point to the termination of his alleged contract of employment. Hence, we decide that his count for damages sounds, primarily, in breach of contract. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986).

Furthermore, we decide that the statute of frauds is a defense to the fraud claim. *Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44 (Tex.Civ.App.—Beaumont, 1980, writ ref'd n.r.e.). Our court wrote that:

> "[I]t is not only the nature of damages sought but also the relationship of the promise to the purposes of the statute of frauds which controls the application of the statute."

We recommend the attorneys for excellent briefs. We can readily understand how a person situated as was Appellant could believe that his employment was permanent in nature and reasonably secure until the retirement age of 65. Benoit contended that he saw these arrangements in other industries of the area. There was no management-labor relation agreement in writing. There was no collective bargaining contract of any type at his plant, however. This belief, on his part, could have been reasonably reinforced by the 4-step procedure for termination. However, his beliefs, however sincerely held, were contrary to the statute of frauds and the great body of decisional law in Texas.

The Supreme Court, in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), affirmed this court's holding in recognizing a narrow exception to the at-will employment rule. The exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act. Of course, Appellant's situation, here, does not fall within Hauck's exception.

We think that a remedy for this situation is proper only before the Legislature. The solons can have hearings on these questions and, through the give and take of the legislative procedure, they can arrive at a reasonable, comprehensive and practical solution to these problems. We decide that this intermediate appellate court should not, and must not, undertake such a legislative prerogative.

AFFIRMED.

BURGESS, dissenting.

I respectfully dissent. This is a summary judgment case. In *Kelley v. Apache Products, Inc.*, 709 S.W.2d 772 (Tex.App.— Beaumont 1986, writ ref'd n.r.e.), a case similar to the one at bar, a unanimous court held that a contract of employment for an indefinite time is not in violation of the statute of frauds if it is considered performable within one year. *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.1974). Further, an employment-at-will contract can be modified by an oral agreement. *See Johnson v. Ford Motor Co.*, 690 S.W.2d 90 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). Appellant's affidavit, attached to his response to the motion for summary judgment, raises a genuine issue of fact concerning a modification. *See Hathaway v. General Mills Inc.*, 711 S.W.2d 227 (Tex.1986).

I would reverse the granting of the summary judgment and remand the case for trial.