**DAY & ZIMMERMANN, INC., Appellant,**

v.

**Ben HATRIDGE, Appellee.**

**No. 6–91–077–CV.**

Court of Appeals of Texas, Texarkana.

May 12, 1992.

John R. Mercy, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

Thomas R. Newman, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Day & Zimmermann, Inc. appeals from a judgment in favor of Ben Hatridge in a wrongful discharge case.

Day & Zimmermann contends that the trial court lacked jurisdiction over the case because the events occurred on a federal enclave; that the cause of action was preempted by the Labor–Management Relations Act; that Hatridge's implied employment contract was unenforceable because it was not in writing; and that Hatridge did not establish a cause of action for wrongful discharge because he was employed on an at-will basis.

Day & Zimmermann also contends the trial court erred in allowing Hatridge to recover for a breach of a duty arising from a special relationship and in instructing the jury that "Longevity of employment creates an expectation of longevity which constitutes a verbal contract of employment." Day & Zimmermann further contends that there was no or insufficient evidence to support the jury's findings that (1) there was a contract separate and apart from the collective bargaining agreement, (2) there was an oral, written, or implied promise by Day & Zimmermann that Hatridge's employment would not be terminated without good cause, and (3) Day & Zimmermann terminated Hatridge's employment without good cause. Finally, Day & Zimmermann urges that the jury's failure to find that Hatridge voluntarily resigned was against the great weight and preponderance of the evidence.

Hatridge brings two cross-points of error. He contends the trial court erred in failing to set aside jury findings which were against the great weight and preponderance of the evidence and in admitting irrelevant evidence.

Day & Zimmermann hired Hatridge in 1962. In 1984, Janice Hampton, an inspector at the plant, complained about Hatridge's conduct of taking parts out of the reject bin and putting them back on the line. After a series of verbal exchanges and incidents, Hatridge, as a gesture of disrespect, dropped his pants in Hampton's presence.

A disciplinary hearing was held on August 1, 1984. It was determined that Hatridge had violated Day & Zimmermann's Rules of Conduct 1.543, Offensive Acts of Sexual Behavior, and 1.546, Falsification of Fact During Investigation. Hatridge was given the choice to resign, and keep considerable accrued vacation and sick leave benefits, or to be terminated and lose the benefits. Hatridge decided to keep the benefits and he did not pursue a union appeal or grievance procedure.

On July 24, 1986, Hatridge filed this suit. Summary judgment was granted to Day & Zimmermann on the basis of Section 301 preemption (Labor–Management Relations Act, 29 U.S.C.A. § 185 (West 1978)); this Court reversed that summary judgment in *Hatridge v. Day & Zimmermann, Inc.*, 789 S.W.2d 654 (Tex.App.–Texarkana 1990, no writ). The case was then tried to a jury which found for Hatridge and awarded him $64,029.20 in damages.

■ Initially, Day & Zimmermann contends that the trial court lacked jurisdiction because the events giving rise to the action occurred on a federal enclave. By deed, Texas ceded to the United States exclusive jurisdiction over the Lone Star Army Ammunition Plant where this cause arose, reserving concurrent jurisdiction for the service of civil and criminal process.

Day & Zimmermann argues that the federal courts have exclusive jurisdiction over actions arising on federal enclaves. The cases cited in support of this contention, however, concerned whether particular state statutes and taxes were applicable to federal enclaves.[1] They did not decide

---

1. *James Stewart Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940) (a state safety statute was applicable on a federal enclave); *Surplus Trading v. Cook*, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1929), and *Adams v. Calvert*, 396 S.W.2d 948 (Tex.1965) (the state could not tax property located on federal enclaves); *Lord v. Local Union No. 2088, Intern. Broth., Etc.*, 646

which court system had jurisdiction of actions arising on federal land.

State courts can have jurisdiction over an action arising on a federal enclave if the cause of action is transitory. *Red Top Cab Co. v. Capps*, 270 S.W.2d 273 (Tex.Civ.App.–Austin 1954, writ ref'd n.r.e.). Such actions can be maintained wherever there is *in personam* jurisdiction over the parties. *Schaff v. Ellison*, 255 S.W. 680 (Tex.Civ.App.–San Antonio 1923, writ ref'd); *see also, Ohio River Contract Co. v. Gordon*, 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997 (1917).

An action on a contract is transitory. *Cole v. Lee*, 435 S.W.2d 283, 287 (Tex.Civ. App.–Dallas 1968, writ dism'd); 20 AM. JUR.2D *Courts* § 126 (1965). The present action alleges a breach of contract; therefore it is transitory and the State court had jurisdiction. Day & Zimmermann's first point of error is overruled.

We shall next address Day & Zimmermann's eighth and ninth points of error, in which it contends that there was no evidence to support the jury's finding of an oral, written, or implied contract, apart from the union contract, that provided that Hatridge could not be terminated without good cause. In ruling on these points, we shall discuss issues raised by Day & Zimmermann's contentions that the alleged contract fell within the statute of frauds and that Hatridge's claim was preempted by federal law.

In reviewing the legal sufficiency of the evidence, this Court must consider only the evidence and reasonable inferences from the evidence that tend to support the jury's finding and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518 (Tex. 1988).

Subject to one narrow exception, Texas adheres to the doctrine of employment at will, under which employment for an indefinite term may be terminated by either party at will, with or without cause. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888). Valid contractual limitations on the right to terminate may, of course, be imposed by agreement of the parties. *United Transportation Union v. Brown*, 694 S.W.2d 630, 632 (Tex.App.–Texarkana 1985, writ ref'd n.r.e.). To establish a cause of action for wrongful discharge, an employee must prove that he and his employer entered into a contract that specifically provided that the employer did not have the right to terminate the employment at will. *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The *Webber* court also stated that the contract must be in writing.[2] The writing requirement, however, stems from TEX. BUS. & COM.CODE ANN. § 26.01(b)(6) (Vernon 1987), which provides that an agreement not performable within one year from the date of making falls within the statute of frauds. The plaintiff in *Webber* alleged a contract guaranteeing him employment until retirement. Such a contract cannot be performed within one year (unless the employee will retire within one year), and must therefore be in writing to be enforceable. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d at 489.

Hatridge does not, however, maintain there was an agreement that he would be employed until retirement, only that he would not be terminated without good cause. An agreement that an employee will not be terminated without good cause could be considered performable within one year. *See Ramos v. Henry C. Beck Co.*,

F.2d 1057 (5th Cir.1981) (Florida's right-to-work laws did not apply to a factory located on a U.S. Air Force base).

2. *See also, Winograd v. Willis*, 789 S.W.2d 307, 310 (Tex.App.–Houston [14th Dist.] 1990, writ denied); *Schroeder v. Texas Iron Works, Inc.*, 769 S.W.2d 625, 628 (Tex.App.–Corpus Christi 1989), *aff'd* 813 S.W.2d 483, 489 (Tex.1991);

*Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 539 (Tex.App.–Houston [1st Dist.] 1988, writ denied); *Stiver v. Texas Instruments, Inc.*, 750 S.W.2d 843, 846 (Tex.App.–Houston [14th Dist.] 1988, no writ); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.–Beaumont 1987, writ ref'd n.r.e.).

711 S.W.2d 331, 336 (Tex.App.–Dallas 1986, no writ); *Kelley v. Apache Products, Inc.,* 709 S.W.2d 772, 774 (Tex.App.–Beaumont 1986, writ ref'd n.r.e.). We need not decide whether the alleged agreement must have been in writing to be enforceable, however, because Hatridge produced *no* evidence of an oral or implied promise that he would not be terminated without good cause.

■ As the only evidence of a contract between himself and Day & Zimmermann, Hatridge points out that he completed a job application and that Day & Zimmermann sent him its Rules of Conduct, an insurance policy, and a verification of retirement plan. It is well established, however, that an application for employment, handbooks, copies of the employer's policies, and other similar documents do not constitute an agreement or contract that limits the employer's right to terminate the employment at will. *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.–Beaumont 1987, writ ref'd n.r.e.); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.–Corpus Christi 1982, no writ).

■ Hatridge argues that Day & Zimmermann imposed a limitation on its right to terminate by a provision of its Rules of Conduct stating, "It is contrary to Company policy for an employee to be unjustly penalized; therefore, no disciplinary action will be taken without due and proper investigation. During the investigation the accused employee will be given full opportunity to present his own defense." Under Texas law, however, such a statement of company policy, unaccompanied by an express agreement, does not create contractual rights. *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, 413 (Tex.App.–Corpus Christi 1988, no writ).

In *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, the plaintiff urged that his employer's policies and procedures manual created an implied agreement not to terminate without good cause. The court held that the manual did not even raise a fact issue whether there was an agreement not to terminate without good cause.

In *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d at 406, the court rejected the argument that an employer's disciplinary policy constituted a promise that the employer would discipline or terminate only in conformity with the policy. The court held that, in order to remove the case from the general employment-at-will rule, the contract must *in a meaningful and special way* provide that the employer does not have the right to terminate the employment at will.

In *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d at 539, the court held there was no evidence of any express agreement which dealt with procedures for discharge of employees, unless the handbooks could be read as such.

We do not believe that they can be so read. Reynolds was in no way prevented from unilaterally amending or even totally withdrawing its handbook.... We believe that the handbooks constituted no more than general guidelines. They were by no means comprehensive, nor were they intended to be implemented as the sole means to terminate contracts of employment.

Hatridge did not allege an oral contract, and under Texas law, the Rules of Conduct amounted to no evidence of a written or implied contract that deprived Day & Zimmermann of the right to terminate Hatridge at will.[3]

There is, moreover, another reason why Hatridge may not rely on the Rules of Conduct to prove a contract. In *Reynolds,* the court noted that the employer could unilaterally amend its handbook. This was held to be another indication that the hand-

---

**3.** *See also, Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 463 (5th Cir.1991); *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir. 1991); *but see Aiello v. United Air Lines, Inc.,* 818 F.2d 1196 (5th Cir.1987); *Ryan v. Superior Oil Co.,* 813 S.W.2d 594, 596 (Tex.App.–Houston [14th Dist.] 1991, writ denied); *Renken v. Harris County,* 808 S.W.2d 222, 225 (Tex.App.–Houston [14th Dist.] 1991, no writ); *Hicks v. Baylor University Medical Center,* 789 S.W.2d 299 (Tex. App.–Dallas 1990, writ denied); *Stiver v. Texas Instruments, Inc.,* 750 S.W.2d 843, 846 (Tex. App.–Houston [14th Dist.] 1988, no writ); *Vallone v. AGIP Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.).

book was not a contract. In the present case, Day & Zimmermann reserved, in Section 6 of the Collective Bargaining Agreement, the right to amend the Rules of Conduct upon its determination that an amendment was "reasonable and necessary for the safe, effective and efficient operation of the plant." The union, however, reserved the countervailing right to protest "the reasonableness, the interpretation or the application" of the Rules.[4]

The Collective Bargaining Agreement shows that the Rules of Conduct were, to some extent, bargained for and that Day & Zimmermann did not have the unlimited right to unilaterally amend them. That union members have rights in the Rules of Conduct, however, proves only a contract between Day & Zimmermann and the represented unions. It is not evidence of a separate contract between Hatridge and Day & Zimmermann. On the contrary, it tends to show that Hatridge's claim is preempted by Federal law.

In a previous opinion in this case, we stated that if the enforcement of the claim requires an interpretation of the collective bargaining agreement, the claim is preempted by Section 301 of the Labor Management Relations Act. *Hatridge v. Day & Zimmermann, Inc.*, 789 S.W.2d at 655, *citing International Brotherhood of Electrical Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).

The Collective Bargaining Agreement provides that the Rules cannot be contrary to the terms of the Agreement. When applying the Rules, an interpretation of the Agreement is required to determine if there is a conflict between the Rules and the Agreement. Therefore, to the extent Hatridge relies on the Rules of Conduct to create a contract, his claim requires an interpretation of the Collective Bargaining Agreement and is preempted by Section 301(a) of the Labor–Management Relations Act, 29 U.S.C.A. § 185(a) (West 1978).

A "no evidence" point must be sustained when the court is barred by rules of law from giving weight to the only evidence offered to prove a vital fact. *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960). Both state and federal rules of law prevent us from giving weight to the Rules of Conduct, Hatridge's only evidence of an agreement modifying his at-will employment status. We therefore sustain the contention that there was no evidence of a contract limiting Day & Zimmermann's right to terminate Hatridge's employment at will.

Day & Zimmermann also complains that the trial court erred in allowing Hatridge to recover for a breach of the duty of good faith and fair dealing in an employment relationship. A jury question was submitted inquiring whether there was a special relationship arising out of the employment contract between Hatridge and Day & Zimmermann.[5] The question

---

**4.** The Company will furnish to each employee and to each contracting Union a copy of the revised Rules of Conduct for Employees. The Company considers that none of the provisions of such revised Rules of Conduct are in conflict with any of the provisions of this Agreement and that such Rules are reasonable and necessary for the safe, effective and efficient operation of the Lone Star Army Ammunition Plant. The Company reserves the management right to amend such Rules of Conduct in the future upon the Company's determination that such amendments are reasonable and necessary for the safe, effective and efficient operation of the plant, but no such amendment may be contrary to any of the terms or provisions of this Agreement. Each contracting Union reserves the right to protest through the grievance and arbitration procedures in this Agreement the reason-

ableness, the interpretation or the application of such Rules of Conduct. By executing this Agreement, a contracting Union does not waive its right to contend that a provision in such revised Rules of Conduct, or any amendment thereto, is contrary to this Agreement, that it is unreasonable, that the Company has improperly interpreted such provisions or that the Company applied such provisions in an arbitrary or unreasonable manner.

**5.** Was there a special relationship arising out of the employment contract between Plaintiff and Day & Zimmermann which existed on and prior to the termination of such employment?

"Special relationship" means a close association between the parties to a contract such as would cause the party who holds a superior

was designed to extend the duty of good faith and fair dealing to the employment context. It was taken from a pattern jury charge based on *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987), in which the court held that insurers have a duty to deal fairly and in good faith with their insureds. The *Arnold* court held that a special relationship arises between an insurer and its insured because (1) the insurer has greater bargaining power than the insured and (2) the nature of insurance claims is such that an insurer, if it had no duty to the insured, could withhold payment and bargain for a smaller settlement while the insured is without a vehicle or a place to live.

Hatridge argues that the unequal bargaining power between an employer and an employee causes the same special relationship to arise in the employment context. He cites *Little v. Bryce*, 733 S.W.2d 937, 943 (Tex.App.–Houston [1st Dist.] 1987, no writ)(Levy, J. concurring),[6] in which Justice Levy argued that "this more enlightened age suggests that we imply a good faith and fair dealing clause into each employment contract, following the examples of Alaska, California, Connecticut, Illinois, Montana, Massachusetts, and New Hampshire."

We recognize that there are many proponents of such a change in the employment law of this state.[7] As noted above, however, Texas has a long history as an employment at will state. *East Line &*

*R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888). Although there are statutory exceptions to employment at will,[8] the Supreme Court has modified the doctrine only twice, and then narrowly.[9] The Supreme Court has never recognized a duty of good faith and fair dealing in the employment relationship, and those courts of appeals that have been asked to find such a duty have uniformly declined to do so.[10] As an intermediate court, we must follow precedent and leave changes in the common law to higher authority. *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.–Houston [14th Dist.] 1990, writ denied).

We sustain Day & Zimmermann's contention that the trial court erred in submitting issues six through nine. The awards of $20,000 in emotional distress and $6,000 in exemplary damages, which were contingent on a finding of a special relationship giving rise to a duty of good faith and fair dealing, are set aside.

Hatridge brings two cross-points of error. We first address Hatridge's contention that the trial court erred by admitting the Collective Bargaining Agreement into evidence over an objection as to its relevance.

Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the action more or less probable. Tex.R.Civ.Evid. 401. Relevant evidence should not be excluded without good cause. *Williams v.*

bargaining position to refrain from taking advantage of that position unfairly, and upon which the opposite party to the contract trusts that he or she will be treated fairly and in good faith.

6. *Little v. Bryce*, 733 S.W.2d 937 (Tex.App.–Houston [1st Dist.] 1987, no writ), was overruled in *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991).

7. *See, e.g.*, Rasty, Comment, *Extending Good Faith and Fair Dealing to Employment Contracts: A Proposal*, 22 Tex.Tech L. Rev. 211, 228–34 (1991).

8. *See* Pfeiffer and Hall, *Employment and Labor Law*, 45 Sw. L.J. 331, 333, n. 14 (1991).

9. *McClendon v. Ingersoll-Rand Co.*, 779 S.W.2d 69 (Tex.1989) (holding that an employee may not be discharged to prevent attainment of pen-

sion plan benefits), *rev'd*, 498 U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that such an action must be brought under ERISA, 29 U.S.C.A. § 1001 et seq.); *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985) (holding that an employee may not be discharged solely for refusing to perform an illegal act).

10. *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex. App.–Houston [14th Dist.] 1990, writ denied); *Hicks v. Baylor University Medical Center*, 789 S.W.2d 299, 303–304 (Tex.App.–Dallas 1990, writ denied); *McClendon v. Ingersoll-Rand Co.*, 757 S.W.2d 816, 819–20 (Tex.App.–Houston [14th Dist.] 1988, *rev'd on other grounds*, 779 S.W.2d 69 (Tex.1989); *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex.App.–Houston [1st Dist.] 1988, writ denied).

*Union Carbide Corp.,* 734 S.W.2d 699, 703 (Tex.App.–Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Since the Collective Bargaining Agreement purports to be the exclusive contract between members of the International Electrical Workers Union and Day & Zimmermann, it was relevant to Hatridge's assertion that he had a separate agreement and to Day & Zimmermann's insistence that he did not have a separate agreement and that his claim was preempted by federal law. The Collective Bargaining Agreement also details the grievance procedures available to Hatridge. The fact that Hatridge chose not to pursue an appeal through the grievance procedures was relevant to Day & Zimmermann's contention that he voluntarily resigned. We find that the trial judge properly admitted this evidence over objections as to its relevance.

■■■■■ We next address Hatridge's contention that the trial court erred by refusing to disregard jury findings that were against the great weight and preponderance of the evidence and enter corrected findings. If a trial court determines that the jury's finding is against the great weight and preponderance of the evidence, it may only grant a new trial. *Gulf, Colorado & Santa Fe Railroad Co. v. Deen,* 158 Tex. 466, 312 S.W.2d 933, *cert. denied,* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958). A trial court may not disregard a jury finding unless the evidence conclusively establishes, or establishes as a matter of law, a different finding. *See U.S. Fire Ins. Co. v. Twin City Concrete, Inc.,* 684 S.W.2d 171, 173 (Tex.App.-Houston [14th Dist.] 1984, no writ).

Thus, even if the jury's findings on damages were against the great weight and preponderance of the evidence, the trial court could only grant a new trial. It could not substitute corrected findings. The point is overruled.

Because our rulings on the foregoing points of error are dispositive of the case, we do not reach the other points of error.

The judgment of the trial court is reversed and judgment is rendered that Hatridge take nothing.