TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00350-CV







Bradley W. Carr, Appellant



v.



Joe Christie, Individually, and Galvanix Corp., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-00516, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Plaintiff Bradley Carr appeals from a summary judgment that he take nothing by his actions
against Joe Christie and Galvanix Corporation. We will reverse the judgment and remand the cause to the
trial court.


THE CONTROVERSY


 Carr worked for Linda Marek, owner of Marek's Battery Maintainers, from 1992 until
1994. The Marek firm manufactured battery products invented by Albert Marek. Carr was apparently
instrumental in expanding the small business during his employment.

 Linda Marek determined to sell the business. Marek began negotiating with Joe Christie,
a prospective purchaser. They reached an agreement, which included Christie's promise that Carr would
be employed for a minimum of four years by the new owner and Linda Marek would reduce the purchase
price previously demanded. The agreement was consummated by Christie's purchase at the discounted
price. He assured Marek he would enter into a written employment contract with Carr. Carr moved from
his home in Dallas to Horseshoe Bay, Texas, to work for Christie and Galvanix Corporation, operator of
the newly purchased business. Carr and Galvanix entered into an employment contract signed by Christie
as president of Galvanix. After Carr had worked for about eighteen months, Galvanix discharged him. 
Carr sued Christie and Galvanix for damages resulting from breach of contract and "fraudulent
inducement." (1)

 Christie recovered summary judgment against each of Carr's causes of action and this
appeal ensued.


BREACH OF CONTRACT


 The contract provided as follows:


1. EMPLOYMENT. The employer hereby employs Employee and Employee
hereby accepts employment by Employer upon the terms and conditions herein
specified.


2. TERM. The term of this agreement shall begin on the 1st day of August 1994
and shall continue for a period of one (1) year or until termination as
hereinafter provided.


3. COMPENSATION. For all services rendered by Employee under this
agreement, Employer shall pay Employee a salary of three-thousand three-hundred thirty-five dollars ($3,335.00) per month. Additionally, and in lieu of
cash, at the end of each fiscal year Employee will receive a STOCK
PURCHASE CREDIT equal to ten percent (10%) of the net profits of the
Employer for the preceding fiscal year to be applied to Employee's purchase of
stock in Employer pursuant to the terms of Employee's STOCK OPTION PLAN
. . . . Additionally, Employee will receive an annual cost-of-living salary increase. 


* * *



10. INVOLUNTARY TERMINATION.  This Employment Contract agreement
shall be deemed to be terminated and the employment relationship . . . shall be
deemed severed upon occurrence of any of the following: [employee's death or
failure to perform duties, adhere to contract provisions, or comply with employer's
reasonable policies, standards and regulations; and for cause, including drug or
alcohol abuse.]



 In his motion for summary judgment, Christie contended as follows: Carr was an employee
at-will because nothing in the contract restricted Christie's power to discharge Carr before or after one
year; the terms of paragraph ten do not purport to be exclusive and paragraph two was intended to mean
that Carr's employment terminated automatically after one year; and, because Carr was an employee at-will when he was discharged, Christie might legally discharge Carr for any or no reason.

 Carr opposed Christie's interpretation of the contract with his own. He contended Christie
breached the contract because the parties intended the quoted language to mean that Carr shall be
employed for a minimum of one year and thereafter might be discharged only for a reason specified in
paragraph ten. Thus, the contract, properly interpreted, did contain an express restriction on Christie's
power to discharge Carr and Christie breached the contract by discharging Carr for no reason after a year
and a half of employment

 In his first point of error, Carr contends the summary judgment is erroneous because neither
his interpretation of the contract nor Christie's interpretation is unreasonable, rendering the contract
ambiguous as to the parties' actual intentions; and, because the contract is ambiguous, it gives rise to a
disputed issue of material fact respecting the parties' actual intentions, precluding judgment as a matter of
law. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1995); Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1980); R & P Enters. v. LaGuarta, Gavrel &
Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). We agree the contract is ambiguous and precluded
summary judgment.

 The provision that the contract shall begin August 1, 1994 and "continue for a period of
one (1) year or until termination as hereinafter provided" does not exclude the reasonableness of Carr's
interpretation, as would have been the case if a temporal limitation had been inserted. Cf., e.g., Hallmark
v. Port/Cooper-T. Smith Stevedoring Co., 907 S.W.2d 586, 592 (Tex. App.--Corpus Christi 1995,
no writ) (contract for a term of ten years "[s]ubject to being sooner terminated as provided in this
[a]greement. . . .") (emphasis added); NHA, Inc. v. Jones, 500 S.W.2d 940, 943 (Tex. App.--Fort
Worth 1973, writ ref'd n.r.e.) (contract for a term of "one (1) year . . . or such lesser periods as shall be
determined by NHA, Inc.") (emphasis added).

 Carr's interpretation is not inconsistent with any other part of the document considered as
a whole. See Williston on Contracts § 618 (Walter H.E. Jaeger ed., 3d ed. 1957). Indeed, his
interpretation is necessary to give effect to two elements of paragraph three of the contract--the provision
for an annual cost-of-living increase and a stock-purchase credit, in lieu of cash, at the end of each fiscal
year. We note in passing that it is difficult to understand what meaning these provisions have under
Christie's theory that the contract terms expired automatically after the expiration of one year. See
Affiliated Capital Corp. v. Commercial Fed. Bank, 834 S.W.2d 521, 526 (Tex. App.--Austin 1992,
no writ) (court must harmonize whole of contract, if possible, so that no provision is rendered meaningless). 
We are content, however, to assume the reasonableness of Christie's interpretation and look only to
whether Carr's interpretation is also reasonable.

 Nor is Carr's interpretation inconsistent with the circumstances under which the contract
was written and executed. See Columbia Gas, 940 S.W.2d at 589; Williston on Contracts § 618
(Walter H.E. Jaeger ed., 3d ed. 1957). (2) The circumstances leading to Carr's employment were atypical. 
Linda Marek agreed to sell her company at a reduced price on Christie's promise of continued employment
for Carr; and, Christie purchased the company at the reduced price on that basis. 

 Christie contends any restrictions on his power to discharge Carr, inferrable from
paragraphs one, two, three, and ten of the contract, are not "express" and "specific." Consequently, 
Christie argues, such a restriction is not enforceable. Numerous judicial opinions state that such restrictions
must be "express" and "specific." (3) These mean simply that the language relied upon must rise to the dignity
of a contractual promise, a legally enforceable declaration that one will do or refrain from doing something
specified. See Goodyear Tire & Rubber Co. v. Portilla, 879 S.W.2d 47, 51 (Tex. 1994); Federal
Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993). This principle is not violated by
contract language that is express, as it is here, but susceptible of two reasonable interpretations. In such
cases, the issue reduces to which of the two specific interpretations was intended by the language expressed
in the contract. (4) Because Carr's interpretation is reasonable, it was error to render judgment as a matter
of law on his contract claim.


FRAUDULENT INDUCEMENT


 In his second cause of action, Carr contended Christie's promise of a minimum four-year
employment contract induced him to move to Horseshoe Bay to help Christie launch Galvanix Corporation,
and that he sustained injury when the promise proved false.

 Christie argues that Carr's cause of action fails because "fraudulent inducement is
traditionally asserted by a defendant as an affirmative defense to prevent the enforcement of a contract
[and] is not normally asserted by a plaintiff seeking to enforce a contract." We note Christie failed to file
any special exceptions in the trial court or otherwise assert this argument before appeal. In any case, we
disagree with Christie's asserted restriction on a cause of action for fraudulent inducement. The supreme
court has defined fraudulent inducement as a simple fraud claim. See DeSantis v. Wackenhut Corp., 793
S.W.2d 670, 688 (Tex. 1990). Thus, the elements of fraud and fraudulent inducement, applicable here,
are (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when
made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which
was relied upon, and (6) which caused injury. Id.

 Christie moved for summary judgment on Carr's fraudulent-inducement claim on the
following grounds: (1) reliance was legally impossible because Carr signed the employment contract before
he moved to Horseshoe Bay; (2) the doctrines of merger, parol evidence, and statute of frauds bar Carr's
claim; (3) knowledge of the truth bars Carr's claim, and (4) Carr suffered no harm by moving to Horseshoe
Bay. 


Statute of Frauds

 We do not believe the statute of frauds bars Carr's fraudulent-inducement claim. In
determining whether a fraud cause of action is barred by the statute of frauds, one must consider (1) the
relationship of the promise to the purpose of the statute, Webber v. M.W. Kellogg Co., 720 S.W.2d 124,
129 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.) and (2) the nature of damages requested. 
Jim Walter Homes, Inc., v. Reed, 711 S.W.2d 617, 618 (Tex.1986). Texas recognizes two measures
of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain
measure. Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812, 817 (Tex. 1997); W.O.
Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). Historically, courts have held the
statute of frauds bars a fraudulent- inducement claim only when the plaintiff claims as damages the benefit
of the bargain that he would have obtained had the promise been performed. Collins v. Allied Pharmacy
Mgmt., Inc., 871 S.W.2d 929, 936 (Tex. App.--Houston [14th Dist.] 1994, no writ); Webber v. M.W.
Kellogg Co., 720 S.W.2d 124, 129 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.). The
statute has never barred a fraudulent-inducement claim in which a plaintiff seeks to obtain only out-of-pocket losses. See Collins, 871 S.W.2d at 936; Leach v. Conoco, Inc., 892 S.W.2d 954, 960 (Tex.
App.--Houston [1st Dist.]1995, writ dism'd w.o.j.). (5)

 With regard to the element of harm, Carr alleged as follows in response to Christie's motion
for summary judgment: "Plaintiff was clearly harmed when in reliance on a representation of a long term
career commitment and a minimum four year contract he moved to [Horseshoe Bay], signed a lease on a
house, incurred contractual rental obligations and was then terminated ." Carr is thus not using a fraud
claim as a vehicle for obtaining the benefit of a long-term employment contract; that is, he is not attempting
to recover the salary and benefits of a four-year contract. Rather, he alleges his move to Horseshoe Bay
was prompted by Christie's false statements and that Carr's change of position worked to his detriment. 
Collins, 511 S.W.2d at 747. Such damages are not barred by the statute of frauds. We cannot say as a
matter of law that the statute of frauds barred Carr's cause of action for fraudulent inducement.


Reliance

 Christie points out that the contract recites that it was signed on August 1, 1994, and that
Carr did not move to Horseshoe Bay until September. Christie therefore argues Carr could not, as a
matter of law, have relied on previous negotiations regarding a long-term contract in changing his position
to his detriment.

 Carr contended in his response to Christie's motion for summary judgment that despite the
date on the contract, the contract was not actually signed until after he moved to Horseshoe Bay in
September. Thus, his reliance on Christie's previous negotiations was possible. Carr introduced affidavit
and deposition proof that the date on the contract was not the true date of the contract was executed. (6) 
Christie objected to this proof, arguing that such evidence was barred by the parol-evidence rule and
merger doctrines. The trial court sustained Christie's objection and struck Carr's affidavits "with respect
to any testimony that purports to add to, take from, alter or [contradict] any statement on the signed written
agreement dated August 1, 1994."

 Carr argues the trial court abused its discretion by striking his affidavits as to the date the
contract was actually signed. Because the contents of the affidavits were admissible, Carr argues, Christie
failed to negate as a matter of law the element of reliance. We agree. The parol-evidence rule operates
only to exclude evidence regarding operative legal transactions and not mere statements or recitals of fact. 
Lindsay v. Clayman, 254 S.W.2d 777, 779 (Tex. 1952) (citing East Line & Red River R.R. Co. v.
Garrett, 52 Tex. 133, 139 (Tex. 1879)); Muhm v. Davis, 580 S.W.2d 98, 101 (Tex. App.--Houston
[1st Dist.] 1979, writ ref'd n.r.e.); see also, Restatement (Second) of Contracts § 218 (1981). (7) The rule
therefore did not prohibit the admission of evidence to contradict a false recital regarding the date the
contract was actually signed. The contract stated:


This contract is made and entered into this 1st day of August, 1994, by and between
Bradley Carr . . . and Galvanix . . . . 


The term of this agreement shall begin on the 1st day of August, 1994 and shall continue
for a period of one (1) year or until termination as hereinafter provided.



The parol evidence rule would bar the admission of evidence purporting to contradict the parties'
agreement that the term was to begin on August 1st--an operative legal transaction--but would not bar
evidence establishing when the agreement was in fact signed. Because the trial court could properly
consider evidence as to the date the contract was executed, the record showed a genuine issue of material
fact as to the elements of reliance and causation. We sustain Carr's eighth and ninth points of error.

 Christie also contended that because Carr was given an opportunity to read the
employment contract before he signed it, "knowledge of the truth" barred his fraudulent- inducement claim. 
According to Christie, because Carr knew what was in his contract before he signed it, no previous
misrepresentations by Christie could have "induced" him to sign the document. We interpret this as another
attack by Christie on the element of reliance. 

 Carr's fraud claim is broader than Christie paints it. Carr alleged he relied on Christie's
misrepresentations before committing to moving to Horseshoe Bay, and was harmed essentially by changing
his position in reliance on Carr's promises. In addition, Carr also alleged that Christie assured him that the
contract, as written, would still protect him for a long period of time. Finally, Carr alleged that because he
had already moved on the basis of Christie's misrepresentations he had no choice but to sign the contract. 
Viewing the facts most favorably to Carr, we believe a genuine issue of material fact exists as to whether
Carr reasonably relied to his detriment on Christie's promises. We sustain point of error five insofar as it
relates to the element of reliance.


Injury

 Nor do we believe Christie has negated as a matter of law the element of injury. In an
attempt to refute Carr's claim of injury, Christie states that Galvanix paid Carr's moving costs to Horseshoe
Bay. Because Carr alleges damages aside from moving costs, the summary judgment record was not
conclusive on this issue.

 In summary, because the employment contract between Carr and Christie was ambiguous
as to its duration, the trial court erred in rendering summary judgment against Carr on his breach-of-contract action. Summary judgment was also erroneous as to Carr's fraudulent-inducement claim because
Christie failed to negate an essential element of that cause of action. We reverse the summary judgment and
remand the cause to the trial court.




 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Remanded

Filed: April 2, 1998

Publish
1. For convenience, we will refer hereafter to appellee Christie alone.
2. Christie contends Carr's summary-judgment proof of the circumstances surrounding the
formation of the contract is inadmissible under the parol evidence rule. It is of course true that parol
evidence is inadmissible if it will vary or contradict a writing intended by the parties as a final and complete
expression of their agreement, provided the writing is not ambiguous--that is to say, provided the writing
on its face "is not fairly susceptible of more than one legal meaning or construction." Lewis v. East Texas
Finance Co., 146 S.W.2d 977, 980 (Tex. 1941); see also Sun Oil Co. (Delaware) v. Madeley, 626
S.W.2d 726, 732 (Tex. 1982) ("If, in the light of the circumstance, the language of the contract appears
to be capable of only a single meaning, the court can then confine itself to the [face of] the writing.")
(emphasis and parenthetical language added).


 As stated by Professor Williston, 


In interpreting contracts or clauses set forth in "clear and unambiguous" language, the
courts do not confine themselves to a mere inspection of the document. Before committing
themselves, the courts carefully examine the surrounding circumstances, prior negotiations,
and all other relevant incidents bearing on the intent of the parties . . . . (citations omitted)


Only after a careful and painstaking search of all the factors shedding light on the intent of
the parties, only after "turning signs and symbols into equivalent realities" will the court
conclude that the language in any given case is "clear and unambiguous." (citations
omitted). 4 Williston on Contracts § 600A (Third Ed. 1957).


(cited with approval in Sun Oil, 626 S.W.2d at 733); see also, City of Pinehurst v. Spooner Addition
Water Co., 432 S.W.2d 515 (Tex. 1968). We must therefore consider the circumstances surrounding the
transaction to determine whether Carr's interpretation of the contract--an interpretation consistent with
the words of the document--is reasonable.


 For the reasons given, the trial court erred in striking Carr's summary-judgment proof of the
circumstances surrounding the making of the contract.
3. See, e.g., Gamble v. Gregg County, 932 S.W.2d 253 (Tex. App.--Texarkana 1996, no writ);
Hallmark v. Port/Cooper-T. Smith Stevedoring Co., 907 S.W.2d 586 (Tex. App.--Corpus Christi
1995, no writ); Vida v. El Paso Employees' Fed. Credit Union, 885 S.W.2d 177 (Tex. App.--El Paso
1994, no writ); Southwest Airlines Co. v. Jaeger, 867 S.W.2d 824 (Tex. App.--El Paso 1993, writ
denied); Whitehead v. University of Texas Health Science Ctr. at San Antonio, 854 S.W.2d 175 (Tex.
App.--San Antonio 1993, no writ); Almazan v. United Servs. Auto. Ass'n, Inc., 840 S.W.2d 776 (Tex.
App.--San Antonio 1992, writ denied); Lee-Wright, Inc. v. Hall, 840 S.W.2d 572 (Tex.
App.--Houston [1st Dist.] 1992, no writ); Day & Zimmerman, Inc. v. Hatridge, 831 S.W.2d 65 (Tex.
App.--Texarkana 1992, writ denied); McAlister v. Medina Elec. Co-op Inc., 830 S.W.2d 659 (Tex.
App.--San Antonio 1992, writ denied); Winograd v. Willis, 789 S.W.2d 307 (Tex. App.--Houston
[14th Dist.] 1990, writ denied); Hicks v. Baylor Univ. Medical Ctr., 789 S.W.2d 299 (Tex.
App.--Dallas 1990, writ denied); Morgan v. Jack Brown Cleaners, Inc., 764 S.W.2d 825 (Tex.
App.--Austin 1989, writ denied); Lumpkin v. H & C Communications, Inc., 755 S.W.2d 538 (Tex.
App.--Houston [1st Dist.] 1988, writ denied); Salazar v. Amigos Del Valle, Inc., 754 S.W.2d 410 (Tex.
App.--Corpus Christi 1988, no writ); Stiver v. Texas Instruments, Inc., 750 S.W.2d 843 (Tex.
App.--Houston [14th Dist.] 1988, no writ); Benoit v. Polysar Gulf Coast, Inc., 728 S.W.2d 403 (Tex.
App.--Beaumont 1987, writ ref'd n.r.e.); Webber v. M. W. Kellogg Co., 720 S.W.2d 124 (Tex.
App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.); Vallone v. Agip Petroleum Co., Inc., 705 S.W.2d
757 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.); United Transp. Union v. Brown, 694
S.W.2d 630 (Tex. App.--Texarkana 1985, writ ref'd n.r.e.); Molder v. Southwestern Bell Tel. Co., 665
S.W.2d 175 (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.); Reynolds Mfg. Co. v. Mendoza,
644 S.W.2d 536 (Tex. App.--Corpus Christi 1982, no writ); Maus v. National Living Ctrs., Inc., 633
S.W.2d 674 (Tex. App.--Austin 1982, writ ref'd n.r.e.) 
4. Christie contends Carr's action is barred by the statute of frauds. See Tex. Bus. & Com. Code
Ann. § 26.01(b)(6) (West 1987) (agreement not to be performed within one year from date of making
agreement not enforceable unless in writing and signed by person to be charged); see also Schroeder v.
Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991). The statute is inapplicable. Carr's action
rests upon his written contract, signed by the defendants. 
5. Several judicial opinions have held that when a plaintiff seeks benefit-of-the-bargain damages
in a fraudulent-inducement claim, the claim is subject to the statute of frauds. Leach v. Conoco, Inc., 892
S.W.2d 954, 960 (Tex. App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.); Collins v. McCombs, 511
S.W.2d 745, 747 (Tex. App.--San Antonio 1974, writ ref'd n.r.e.). The courts reason the application
of the statute of frauds in such circumstances prevents a plaintiff from using a fraud cause of action to
enforce indirectly an otherwise unenforceable promise. Collins, 511 S.W.2d at 747. Out-of-pocket
losses, on the other hand, have been classified as strictly "tort" damages, to which the statute of frauds does
not apply. Id. 


The supreme court recently held, however, that any damages proven by a plaintiff in a fraudulent
inducement claim sound in tort, not contract. Formosa Plastics Corp. U.S., Formosa Plastic Corp. v.
Presidio Engineers and Contractors, Inc., 41 Tex. Sup. Ct. J. 289, 293 (Jan. 16, 1998). Thus, even
benefit-of-the-bargain damages are now properly classified as sounding in tort. Id. Because Carr pleaded
only out-of-pocket losses, which have never been barred by the statute of frauds, we express no opinion
as to whether Formosa affects the holdings of those cases which find the statute of frauds a potential bar
to the recovery of benefit-of-the-bargain damages in a fraudulent-inducement action. 
6. The date on the contract was typewritten and incorporated into the text; neither party dated the
contract when signing it.
7. The Restatement (Second) of Contracts states:


An integrated agreement may have the effect of discharging a prior promise, conveyance,
or discharge; it does not establish fictitious events.


Section 218 cmt. a (1981).



 Paso Employees' Fed. Credit Union, 885 S.W.2d 177 (Tex. App.--El Paso
1994, no writ); Southwest Airlines Co. v. Jaeger, 867 S.W.2d 824 (Tex. App.--El Paso 1993, writ
denied); Whitehead v. University of Texas Health Science Ctr. at San Antonio, 854 S.W.2d 175 (Tex.
App.--San Antonio 1993, no writ); Almazan v. United Servs. Auto. Ass'n, Inc., 840 S.W.2d 776 (Tex.
App.--San Antonio 1992, writ denied); Lee-Wright, Inc. v. Hall, 840 S.W.2d 572 (Tex.
App.--Houston [1st Dist.] 1992, no writ); Day & Zimmerman, Inc. v. Hatridge, 831 S.W.2d 65 (Tex.
App.--Texarkana 1992, writ denied); McAlister v. Medina Elec. Co-op Inc., 830 S.W.2d 659 (Tex.
App.--San Antonio 1992, writ denied); Winograd v. Willis, 789 S.W.2d 307 (Tex. App.--Houston
[14th Dist.] 1990, writ denied); Hicks v. Baylor Univ. Medical Ctr., 789 S.W.2d 299 (Tex.
App.--Dallas 1990, writ denied); Morgan v. Jack Brown Cleaners, Inc., 764 S.W.2d 825 (Tex.
App.--Austin 1989, writ denied); Lumpkin v. H & C Communications, Inc., 755 S.W.2d 538 (Tex.
App.--Houston [1st Dist.] 1988, writ denied); Salazar v. Amigos Del Valle, Inc., 754 S.W.2d 410 (Tex.
App.--Corpus Christi 1988, no writ); Stiver v. Texas Instruments, Inc., 750 S.W.2d 843 (Tex.
App.--Houston [14th Dist.] 1988, no writ); Benoit v. Polysar Gulf Coast, Inc., 728 S.W.2d 403 (Tex.
App.--Beaumont 1987, writ ref'd n.r.e.); Webber v. M. W. Kellogg Co., 720 S.W.2d 124 (Tex.
App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.); Vallone v. Agip Petroleum Co., Inc., 705 S.W.2d
757 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.); United Transp. Union v. Brown, 694
S.W.2d 630 (Tex. App.--Texarkana 1985, writ ref'd n.r.e.); Molder v. Southwestern Bell Tel. Co., 665
S.W.2d 175 (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.); Reynolds Mfg. Co. v. Mendoza,
644 S.W.2d 536 (Tex. App.--Corpus Christi 1982, no writ); Maus v. National Living Ctrs., Inc., 633
S.W.2d 674 (Tex. App.--Austin 1982, writ ref'd n.r.e.) 
4. Christie contends Carr's action is barred by the statute of frauds. See Tex. Bus. & Com. Code
Ann. § 26.01(b)(6) (West 1987) (agreement not to be performed within one year from date of making
agreement not enforceable unless in writing and signed by person to be charged); see also Schroeder v.
Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991). The statute is inapplicable. Carr's action
rests upon his written contract, signed by the defendants. 
5. Several judicial opinions have held that when a plaintiff seeks benefit-of-the-bargain damages
in a fraudulen