Jeffrey BERRY, Appellant,

v.

**DOCTOR'S HEALTH FACILITIES**
**d/b/a Doctors Hospital, Appellee.**

No. 05–85–00715–CV.

Court of Appeals of Texas,
Dallas.

June 12, 1986.

Frank P. Hernandez, Dallas, for appellant.

John F. McCarthy, Jr., Dallas, for appellee.

Before AKIN, HOWELL and HOLLINGSWORTH, JJ.

HOWELL, Justice.

Jeffrey Berry sued Doctor's Health Facility (DHF) alleging that it had wrongfully discharged him from his job as a maintenance technician. He appeals from a summary judgment rendered for DHF. Finding no reversible error, we affirm the trial court's judgment.

In reviewing summary judgments the following standards apply: (1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985); *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 592–593 (Tex.1975). To prevail, a movant must negate one or more elements of the plaintiffs' case as a matter of law or prevail as a matter of law on a defense. *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 455 (Tex.1972); *see also Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984).

The evidence before the trial court consisted of depositions of Berry as well as

other witnesses. For purposes of summary judgment review, we will accept his version of the facts and make every reasonable inference in his favor.

On the day in question, Berry was to work two shifts separated by several hours. Between shifts a co-worker drove Berry to cash a paycheck and to run some errands. They returned to the co-worker's residence where Berry drank two beers at most. He then returned to work. He told the supervisor of his drinking the beer and the supervisor replied that he could not have Berry on the job in that condition. Berry believed that the supervisor was referring to his ankle, which was in a cast because of an accident. The following day, however, the personnel director called Berry into his office and fired him for coming to work intoxicated.

Berry insists that he was not, in fact, intoxicated. He asserts that the alleged drinking incident was merely a pretext, that the supervisor himself had often been under the influence of alcohol while on duty and on one occasion had even brought beer to the job for the employees. Berry speculates that the true motive underlying his discharge was retaliation. This supervisor had previously discharged him but the action had been overturned by DHF's internal appeals procedure. He also suggests that DHF fired him because he "knew too much" about alleged improprieties in the DHF administration.

■ Any discussion of wrongful discharge must commence with the longstanding employment at will doctrine. First enunciated in *East Line & R.R.R. Co. v. Scott*, 73 Tex. 70, 75, 10 S.W. 99, 102 (1888), the doctrine provides that absent an express agreement to the contrary, either the employer or the employee may terminate their relationship at any time, for any reason. *Mitsubishi Aircraft International, Inc. v. Mauer*, 675 S.W.2d 286, 289 (Tex.App.—Dallas 1984, no writ).

Berry does not attempt to show an express agreement securing his continued employment. The at-will doctrine would seem to preclude his recovery under the facts presented. Berry, however, urges that his discharge falls within three exceptions to the at-will doctrine.

First, Berry contends that DHF's employee handbook creates a contract and that he could be legally discharged only by its terms. Other jurisdictions have held that employee handbooks can become part of the employment contract and limit the employer's right to discharge an employee. *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983); *Touissant v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). *See* Comment, *The At-Will Doctrine: A Proposal to Modify the Texas Employment Relationship*, 36 Baylor L.Rev. 667, 673–74 (1984).

The Corpus Christi Court of Appeals considered the handbook question in *Reynolds Manufacturing Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982). The court rejected the claim that Reynolds's employee handbook gave the employee a protectable contract right in continued employment. The court stressed that Reynolds retained the right to amend or withdraw the handbook. The handbook in question merely provided general guidelines and was not intended to set forth the sole means of termination. *Reynolds*, 644 S.W.2d at 539. *Cf. Smith v. Kerrville Bus Co.*, 709 F.2d 914 (5th Cir.1983).

■ We need not decide whether an employee handbook can limit a Texas employer's right to discharge an employee at will. The summary judgment evidence establishes as a matter of law that DHF's handbook did not circumscribe its ability to dismiss Berry.

The inside back cover of the handbook contains the following language:

I UNDERSTAND THAT THIS HANDBOOK IS A GENERAL GUIDE AND THAT THE PROVISIONS OF THIS HANDBOOK DO NOT CONSTITUTE AN EMPLOYMENT AGREEMENT (CONTRACT) OR A GUARANTEE TO CONTINUE EMPLOYMENT.

I FURTHER UNDERSTAND THAT DOCTORS HOSPITAL RESERVES THE RIGHT TO CHANGE THE PROVISIONS OF THIS HANDBOOK AT ANYTIME.

Directly beneath this disclaimer is a form acknowledging that the employee has received and read the handbook. Berry signed this form.

Berry's employment application stated "I understand and agree that, if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any prior notice." Furthermore, in his deposition Berry unequivocally testified that he understood that DHF was not offering an employment contract by means of the handbook and that he was not guaranteed employment for a definite term. In short, the record is devoid of any facts that would elevate the employee handbook beyond its self-proclaimed status of a revocable general guideline.

Berry next asserts that DHF's wrongful termination constituted an intentional tort. He relies upon *K.W.S. Manufacturing Co. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). In *K.W.S.*, the jury found that the plaintiff had been discharged for insisting upon receiving 5% of the corporation's stock that he was entitled to receive under the agreement of the parties. After reviewing the circumstances of the termination, the court concluded that the defendants were "harsh and oppressive" in terminating the plaintiff and that the wrongful termination was a tort as well as a breach of contract. *K.W.S.*, 565 S.W.2d at 373.

■ *K.W.S.* should be considered in light of its factual situation. The alleged wrongful discharge represented only the finale of a course of fraudulent conduct whereby the plaintiff was induced to contribute labor and materials to the corporation in exchange for stock. The at-will doctrine was simply never at issue. The Fifth Circuit has commented upon *K.W.S.* as follows:

A close reading of *K.W.S.* reveals that the court did not carve out an exception to the at will rule in that case. Indeed, the court's opinion nowhere mentions the at will rule. The simple explanation for this omission is that while the defendants attacked the plaintiff's judgment on the wrongful discharge theory on several grounds, they did not raise the argument that the at will rule barred the award. Since the effect of the at will rule was neither raised nor discussed in *K.W.S.*, *K.W.S.* does not supply a precedent for a departure from the rule.

*Phillips v. Goodyear Tire & Rubber Co.*, 651 F.2d 1051, 1056 n. 6 (5th Cir.1981), *reh. denied*, 671 F.2d 860 (5th Cir.1980). We conclude that the court of civil appeals in *K.W.S.* did not intend to modify *sub silentio* the well-established at-will doctrine. Berry cannot recover under the tort theory.

The final theory advanced to avoid the at-will doctrine is the public policy exception. The supreme court recognized a limited public policy exception in *Sabine Pilot Service, Inc. v. Houck*, 687 S.W.2d 733 (Tex.1985). The court reversed a summary judgment rendered against a seaman who alleged that he was fired for refusing to illegally pump the ship's bilges. The opinion emphasizes that it is intended to carve a narrow exception to the at-will doctrine.

[P]ublic policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment at will doctrine announced in *East Line & RRR Co. v. Scott*. That narrow exception covers *only* the discharge of an employee for the *sole* reason that the employee refused to perform an illegal act.

687 S.W.2d at 735. (emphasis added).

■ It is evident that *Sabine Pilot* merely proscribes an employer from placing an employee between the Scylla of discharge from his livelihood and the Charybdis of criminal liability. *See Tate v. Overseas Bulktank Corp.*, 617 F.Supp. 1075, 1077 (E.D.Tex.1985). Berry does not attempt to allege that he was fired for refusing to violate the law. He hints at improprieties

in the hospital administration but he does not claim to be a "whistleblower." The record simply does not suggest any public policy consideration that would justify disregarding the at-will doctrine.

Thus, accepting the facts as presented by Berry, he was merely an at-will employee, whose continued employment is not legally protected. The judgment of the trial court is affirmed.