Joanne **VIDA,** Appellant,

v.

**EL PASO EMPLOYEES' FEDERAL CREDIT UNION,** Appellee.

No. 08–93–00333–CV.

Court of Appeals of Texas, El Paso.

June 16, 1994.

Opinion Overruling Motions to Vacate and for Rehearing Sept. 22, 1994.

Mike Milligan, El Paso, for appellant.

Kenneth R. Carr, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for appellee.

Before BARAJAS, C.J., and LARSEN and McCOLLUM, JJ.

## OPINION

LARSEN, Justice.

In this wrongful termination suit, plaintiff Joanne Vida claims she was discharged from her position with defendant El Paso Employees' Federal Credit Union in retaliation for using the employer's internal grievance procedures. She sued alleging breach of contract, promissory estoppel, equitable estoppel, and fraud. The trial court granted the credit union's motion for summary judgment. In a single point of error, plaintiff urges that the trial court erred in holding unenforceable the credit union's promise not to retaliate against its employees for using its internal grievance procedure. We reverse and remand for trial on the merits.

### FACTS

Plaintiff Joanne Vida was employed by El Paso Federal Employees Credit Union for eight years, from May 1983 until her discharge in March 1991. During that time, the credit union adopted a personnel policy manual which included an internal grievance procedure. The manual contained a specific assurance that "[n]o employee shall be penalized for using the grievance procedure." In early 1991, Ms. Vida and several other women filed a grievance after the credit union promoted an individual they believed was unqualified.

On 4 March 1991, Ms. Vida received a notice of termination from Ray Ponteri, president of the credit union. The notice contained eight reasons for her termination:

1. Violation(s) of Board of Directors policy governing employee contact with Directors.
2. Insubordination by failing to follow specific procedures outlined in writing by me regarding contact with Directors.
3. Initiating and participating in malicious and disruptive discussion with various employees to undermine management authority and to foster discontent among employees.
4. Condescending and disrespectful behavior towards your supervisor and other management employees.
5. Unauthorized use of a paid employee for delivery of material to a Mr. Montes.
6. Inappropriate handling of your personal finances and subsequent manipulation of your account in an attempt to hide savings from the IRS.
7. Unauthorized and inaccurate release of information regarding a dismissed employee's performance.
8. Inappropriate behavior in front of members while working at the University branch office.

Plaintiff filed suit against the credit union alleging wrongful termination. Her petition alleged that her termination was "without legal justification or excuse, and in violation of Plaintiff's contractual rights under the

credit union's 'Personal Policy Manual,' " specifically the provision prohibiting retaliation for using the grievance procedure, the progressive discipline provision, and the enumerated causes for discipline.

The credit union's motion for summary judgment urged that all plaintiff's causes of action were grounded on her claim that the personnel policy manual was an employment contract limiting its right to discharge her, and that the credit union breached that alleged contract by terminating her. It urged that the manual could not, as a matter of law, constitute a contract, and that the credit union was therefore entitled to summary judgment on all causes of action.

Plaintiff's response argued that Ms. Vida and three other credit union employees had been passed over for promotion under circumstances suggesting age and race discrimination. Rather than file a complaint with federal or state agencies handling such matters, they elected to use the credit union's internal grievance procedure, relying upon the manual's assurance that their jobs would not be in jeopardy if they did so. Ms. Vida urged that the sole issue before the court was whether the personnel policy manual created enforceable rights after the employee had completed performance in detrimental reliance upon it. Plaintiff characterizes the credit union's position as:

[T]hat it could tell its employees: 'If you do this thing, you will receive this benefit,' and then refuse to grant the benefit *after* an employee has done whatever the employer wanted.

Plaintiff compares this to a situation where certain vacation or wage benefits are outlined in a personnel manual, and the employer denies the benefits after an employee has complied with the conditions which should confer them. Plaintiff urges that this is a case of first impression in Texas.

■ Using the well-established summary judgment review standards,[1] we assume that Ms. Vida was indeed fired in retaliation for using the grievance procedure, and that she elected to use the grievance procedure, rather than another available avenue of redress, because the credit union's personnel manual assured her that she would suffer no retaliation for doing so.

### THE PERSONNEL MANUAL

■ The long-standing rule in Texas is that an employee without a written employment contract is an employee at-will, and the employment relationship is terminable at any time by either party, with or without cause. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993); *East Line & R.R.R. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (Tex.1888). Certain statutory restrictions and one judicial exception to this rule exist,

1. That standard of review is:
   1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;
   2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants will be taken as true; and
   3. Every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).
   Where, as here, defendant is movant, our review is limited to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiffs' cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970); *Zep Manufacturing Company v. Harthcock*, 824 S.W.2d 654, 658 (Tex.App.—Dallas 1992, no writ).

Because it is plaintiff's burden to establish each element of the cause of action, if defendant submits summary judgment evidence disproving at least one element of the plaintiff's case, then the defendant's summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex. App.—El Paso 1985, no writ). In short, a summary judgment entered in favor of a defendant is proper only if the plaintiff could not succeed on any of the theories pleaded, as a matter of law. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *Gibbs*, 450 S.W.2d at 828.

Where a summary judgment does not state the grounds upon which it is granted, as here, an appellant must show on appeal that each of the independent grounds alleged in the motion is insufficient to support the summary judgment. *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889 (Tex.App.—El Paso 1983, no writ).

but current Texas law generally allows an employer to discharge an employee for a good reason, a bad reason, or no reason at all.

In numerous cases, discharged employees have attempted to recover for breach of contract by alleging that their employers' personnel manuals contained enforceable promises altering the at-will relationship. See *Dutschmann*, 846 S.W.2d at 283; *Hicks v. Baylor University Medical Center*, 789 S.W.2d 299, 303 (Tex.App.—Dallas 1990, writ denied); *Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 61 (Tex.App.—Dallas 1986, no writ); *Reynolds Manufacturing Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ). Texas courts have generally rejected this theory, particularly where a specific disclaimer in the employee handbook warns the employee that the manual is intended to provide guidelines only, and does not create contractual rights. The credit union's manual here contains no such provision. We therefore conclude that those cases relying upon disclaimers do not control here.

■ Although courts usually find that general statements about working conditions, disciplinary procedures, or termination rights are not sufficient to change the at-will employment relationship, a handbook may modify the at-will relationship if it *specifically and expressly* curtails the employer's right to terminate the employee. *McAlister v. Medina Electric Cooperative, Inc.*, 830 S.W.2d 659, 664 (Tex.App.—San Antonio 1992, writ denied); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). The manual must restrict the at-will relationship in a *meaningful and special* way. *Stiver v. Texas Instruments, Inc.*, 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ). The handbook must contain a specific contractual term altering at-will status. *Johnson v. Ford Motor Co., Inc.*, 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Maus v. National Living Centers, Inc.*, 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.). See also *Whitehead v. University of Texas Health Science Center of San Antonio*, 854 S.W.2d 175, 181 (Tex.App.—San Antonio 1993, no writ).

■ Here, the credit union manual contains a provision specifically and expressly promising that "[n]o employee shall be penalized for using the grievance procedure." We find that this provision limits the employer's termination rights in a narrow, clearly delineated way. Although the at-will doctrine still governed the relationship between plaintiff and defendant in most areas, the employer made a specific pledge that it would not terminate (or otherwise retaliate against) an employee for a single, particular reason. We believe the assurance in this employee handbook meets the test of a specific, express limitation that alters the at-will relationship in a meaningful way. Ms. Vida is entitled to a factual determination of her claims, and if she can prove her termination was motivated by use of the internal grievance procedure, she is entitled to damages for the company's breach of that promise.

### PROMISSORY ESTOPPEL

■ We believe that summary judgment on the breach of contract action was incorrect on an alternative theory, as well. Ms. Vida argues that should her contract cause of action fail, the doctrine of promissory estoppel nevertheless requires the credit union be held to its assurance that no retaliation would result from using the grievance process. Promissory estoppel is an equitable doctrine which:

> [D]oes not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them.... The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1973), quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex.1965).

The elements of promissory estoppel are: (1) a promise; (2) foreseeability by the promisor that the promisee would rely upon it; and (3) reliance upon the promise to the promisee's detriment. *English v. Fischer*, 660 S.W.2d

521, 524 (Tex.1983); *Roberts v. Geosource Drilling Services, Inc.,* 757 S.W.2d 48, 50 (Tex.App.—Houston [1st Dist.] 1988, no writ). Making all inferences and presuming all facts in favor of plaintiff, we conclude that there is a fact issue precluding summary judgment on this theory. Plaintiff claims that the credit union promised it would not retaliate against employees for using internal grievance procedures, not merely foreseeing that its workers would rely upon it, but with the specific intent of encouraging use of this process rather than other external measures. Ms. Vida also asserts that she elected not to complain to state and federal agencies which might have provided a remedy for her problem because of the non-retaliation promise in the personnel manual. She used the grievance procedure, and she was discharged shortly afterward. A fact issue is present on this issue.

### FRAUD

■ Finally, we address plaintiff's cause of action for fraud. The elements of fraud are: (1) a material representation; (2) that was false; (3) that the employer, at the time, knew was false or made recklessly without knowledge of its truth and as a positive assertion; (4) with intent that it would be acted upon by the employee; (5) detrimental reliance; and (6) resulting damage. *Levine v. Loma Corp.,* 661 S.W.2d 779, 783 (Tex.App.—Fort Worth 1983, no writ). A promise to do an act in the future is actionable fraud when made with the intent, design, and purpose of deceiving and with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). Intent not to perform a promise when it was made may be proved circumstantially and may be inferred from a party's subsequent acts. *Id.*

The credit union argues that it is entitled to summary judgment on plaintiff's fraud cause of action because it is, in reality, just a reframing of her breach of contract claim. The employer contends that, where the injury to be redressed is that of economic loss stemming from the loss of contractual rights, the action sounds in contract, not tort, and plaintiff cannot rely upon a fraud claim where her breach of contract claim is unenforceable.

We need not reach the merits of this argument, as we have concluded that plaintiff presents a fact question on her breach of contract claim. As summary judgment should not have been entered on the contract cause of action, it was inappropriate as to the fraud cause of action as well.

### CONCLUSION

Appellant's sole point of error is sustained. Genuine issues of material fact exist precluding summary judgment in this case. We therefore reverse the judgment of the trial court, and remand for trial on the merits.

### OPINION ON JOINT MOTION TO VACATE THE OPINION AND ON MOTION FOR REHEARING

September 22, 1994

■ The parties to this appeal have filed their joint motion to vacate the opinion and judgment and dismiss appeal, stating that they have reached an agreement to settle their differences, "contingent upon this Court's withdrawl of the Opinion and Judgment ..." issued June 16, 1994. We overrule the motion.

Although this Court certainly encourages the settlement of controversies, we remind the parties that we do not sit as a purely private tribunal to settle private disputes. We believe that our opinion in this case involves matters of public importance, and our duty as an appellate court requires that we publish our decision. See *Houston Cable TV, Inc. v. Inwood West Civic Assoc.,* 860 S.W.2d 72, 73 (Tex.1993).

Appellee's motion for rehearing is also overruled.