Raytheon E. Systems, Inc. formerly known as Chrysler Technologies Airborne Systems, Inc. v. George Grant Thompson
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-313-CV

     RAYTHEON E. SYSTEMS, INC., FORMERLY
     KNOWN AS CHRYSLER TECHNOLOGIES
     AIRBORNE SYSTEMS, INC.,
                                                                              Appellant
     v.

     GEORGE GRANT THOMPSON,
                                                                              Appellee
 

From the 19th District Court
McLennan County, Texas
Trial Court # 92-1179-1
                                                                                                               

O P I N I O N
                                                                                                                

      Raytheon E-Systems, Inc., the successor in interest to Chrysler Technologies Airborne
Systems, Inc. (“CTAS”), appeals a jury award of $172,500 in favor of George Thompson as
compensation for the wrongful termination of his employment. In four issues presented, CTAS
challenges (1) the legal and factual sufficiency of the evidence supporting the jury’s promissory
estoppel finding, (2) the trial court’s failure to apply the statute of frauds, (3) the amount of
damages found by the jury, and (4) the award of prejudgment interest on costs of court. 
I. Factual and Procedural Background
A. Summary of the Facts
      In 1990, George Thompson was employed by CTAS as the “Production Department Head”
in charge of aircraft modification at CTAS’ Waco facility. However, from May through
December 1990, Thompson suffered from health problems which caused him to be “in and out”
of the hospital. When Thompson returned to light duty work in the middle of December 1990,
Thompson’s superiors


 evaluated his work performance as being unacceptable. Thompson was
then informed that he would no longer be the Production Department Head for CTAS, but he was
being transferred into a staff position. 
      Upon receiving this evaluation and transfer to a staff position, Thompson testified that he felt
like quitting, but he decided to stay for financial reasons because he would continue to draw the
same salary even in his new staff position. Thompson stated that, after he was placed in his new
position, he was moved into a small office and given no work to do. 
      During this time-frame, CTAS was working on a commercial aircraft modification project for
Boeing to modify two airplanes for use by the Prime Minister of Japan. This project was behind
schedule, and at the request of the program manager for the Japanese aircraft project, Thompson
was assigned to oversee the modifications on these two airplanes in order to get the project back
on schedule. From February 1991 through August 1991, Thompson put in many long days
planning and completing the modification of the first airplane, as well as beginning the
modification process on the second aircraft. However, on August 9, 1991, the day the first
aircraft was accepted by Boeing, Thompson’s employment at CTAS was terminated. 
      Thompson subsequently filed suit against CTAS claiming that his employment was wrongfully
terminated. Thompson alleged at trial that CTAS promised him employment until retirement
without termination except for good cause, that the parties had agreed on this term of employment,
and that CTAS committed fraud against Thompson. CTAS denied that it made this promise,
denied that there was any contractual agreement modifying Thompson’s at-will employment, and
denied that it committed fraud. At trial CTAS maintained that Thompson’s termination was the
result of a reduction in force which was necessary to cut costs as the defense industry declined. 
Thompson responded that he had no knowledge of any reduction in force which occurred the day
he was terminated and claimed that CTAS had plenty of aircraft modification work available for
him to work on at the time of his termination. 
B. Jury Findings
      In the court’s charge, the judge instructed the jury on three causes of action: breach of
contract, promissory estoppel, and fraud. In a 10-2 verdict, the jury found against Thompson on
his breach of contract claim by deciding that there was no agreement between the parties that
Thompson would be employed by CTAS until retirement unless there was good cause to terminate
his employment. However, the jurors concluded that Thompson had proved his promissory
estoppel cause of action. The jury found by their verdict that CTAS promised Thompson
employment until retirement with termination only for good cause, that Thompson substantially
relied on this promise to his detriment, and that Thompson’s reliance on this promise was
foreseeable by CTAS. As compensation for the damages Thompson suffered from his reliance on
CTAS’ promise, the jury awarded Thompson $172,500. The jury also found that CTAS
committed fraud, but the jurors awarded zero damages for this cause of action. Finally, the jury
found that CTAS did not act with the intent to harm Thompson or with conscious indifference.
II. Issues Presented
      CTAS’ first issue challenges the sufficiency of the evidence supporting the jury’s promissory
estoppel finding. The elements of a promissory estoppel claim are “(1) a promise, (2)
foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to
his detriment.” English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Central Texas
Micrographics v. Leal, 908 S.W.2d 292, 298 (Tex. App.—San Antonio 1995, no writ). As the
Supreme Court recently stated in Trammel Crow Co. No. 60 v. Harkinson, promissory estoppel
“may apply when there is a promise that the promisor should reasonably expect to induce action
or forbearance of a definite and substantial character on the part of the promisee, and does induce
such action or forbearance, if injustice can be avoided only by enforcement of the promise.” 944
S.W.2d 631, 636 (Tex 1997) (citing “Moore” Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d
934, 937 (Tex. 1972)). While promissory estoppel is generally a defensive issue, it may also be
alleged by the plaintiff as a cause of action. See Wheeler v. White, 398 S.W.2d 93, 94-95 (Tex.
1965); El Paso Healthcare Sys., Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 698 (Tex. App.—El
Paso 1997, writ denied); Gold Kist, Inc. v. Carr, 886 S.W.2d 425, 431 (Tex. App.—Eastland
1994, writ denied); Traco, Inc. v. Arrow Glass Co., 814 S.W.2d 186, 188-89 (Tex. App.—San
Antonio 1991, writ denied).
      In reviewing a legal sufficiency claim on appeal, we must view the evidence produced at trial
and the reasonable inferences from that evidence in the light most favorable to the verdict to
determine if more than a scintilla of evidence supports the jury finding. See Texarkana Mem’l
Hosp., Inc. v. Murdock, 946 S.W.2d 836, 838 (Tex. 1997); Texas Dep’t of Transp. v. Abilez, 962
S.W.2d 246, 249 (Tex. App.—Waco 1998, no pet.); see also Merrell Dow Pharm., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). If more than a scintilla of evidence supports a jury
finding, the appellant’s legal sufficiency complaint will be overruled. Id. “More than a scintilla
of evidence exists when the evidence supporting the finding, as a whole, ‘rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions.’” Merrell Dow
Pharm., Inc., 953 S.W.2d at 711 (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
499 (Tex. 1995)).
      The general rule in Texas is that employment for an indefinite term may be terminated at will
by either the employee or the employer without cause. See Montgomery County Hosp. Dist. v.
Brown, 965 S.W.2d 501, 502 (Tex. 1998); Federal Express Corp. v. Dutschmann, 846 S.W.2d
282, 283 (Tex. 1993); Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 734 (Tex. 1985). This
at-will relationship, which allows the termination of employment without cause, may be modified
by express agreement or through certain statutory and judicially created exceptions. See
Montgomery County Hosp. Dist., 965 S.W.2d at 502 (modification by agreement); Sabine Pilot
Serv., Inc., 687 S.W.2d at 735 (judicially created exception to the employment at will doctrine
for refusal to perform an illegal act); see also Austin v. Healthtrust, Inc.—The Hosp. Co., 967
S.W.2d 400, 402-03 (Tex. 1998) (discussing whistleblower statutes which protect an employee
from retaliation). However, the Supreme Court has never addressed the application of promissory
estoppel in the employment context, and the intermediate appellate courts have struggled with this
issue. 
      For example, in Roberts v. Geosource Drilling Services, Inc., the Houston First Court of
Appeals reversed a summary judgment granted to the employer because the court found there was
a fact issue on the employee’s promissory estoppel claim. 757 S.W.2d 48, 50-51 (Tex.
App.—Houston [1st Dist.] 1988, no writ). In Roberts, the employee quit his old job in reliance
on the employer’s promise of a new position, but the employee was informed several days later
that a more qualified individual had been hired to fill the position. Id. at 49-50. In analyzing the
employee’s promissory estoppel claim, the Houston First Court stated that the employer’s 
 
undisputed oral promise clearly imposed a duty on Geosource to employ Roberts—but
not for a fixed duration—and that duty was breached by Geosource. It is no answer that
the parties’ written contract was for an employment-at-will, where the employer
foreseeably and intentionally induces the prospective employee to materially change his
position to his expense and detriment, and then repudiates its obligations before the
written contract begins to operate.

Id. at 50. Similarly, the El Paso Court in 1994 also reversed a summary judgment granted in
favor of the employer because a fact issue existed on whether the employee relied on a promise
of non-retaliation for using the company’s internal grievance procedure when she was fired shortly
after filing a grievance. See Vida v. El Paso Employees’ Fed. Credit Union, 885 S.W.2d 177,
181-82 (Tex. App.—El Paso 1994, no writ) (also finding fact issues on the employee’s breach of
contract and fraud causes of action).
      However, other courts have not followed the Roberts decision. See Collins v. Allied
Pharmacy Management, Inc., 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no
writ) (criticizing Roberts as wrongly decided). In Robert J. Patterson, P.C. v. Leal, the Corpus
Christi Court held that a prospective employee’s cause of action for promissory estoppel was
barred by the employment at will doctrine when the alleged promise consisted only of “purely oral
representations as to employment for an indefinite period.” 942 S.W.2d 692, 695 (Tex.
App.—Corpus Christi 1997, writ denied). 
      In the instant case, we need not resolve whether or not we believe the employment at will
doctrine always prevents an employee from bringing a promissory estoppel claim asserting that
the employee was wrongfully terminated because, after reviewing the record in this case, we
conclude that no evidence supports the jury’s promissory estoppel finding. As the Supreme Court
discussed in Montgomery County Hospital District v. Brown, a promise is “‘a manifestation of
intention to act or refrain from acting in a specified way, so made as to justify a promisee in
understanding that a commitment has been made.’” See Montgomery County Hosp. Dist., 965
S.W.2d at 502 (quoting Restatement (Second) of Contracts § 2(1) (1981)). While
Montgomery County Hospital District is a breach of contract case, the Supreme Court’s reasoning
is helpful to analyze the issues in the instant case. The Court concluded in Montgomery County
Hospital District that “[g]eneral comments that an employee will not be discharged as long as his
work is satisfactory” do not limit an employer’s right to terminate the employee. See Montgomery
County Hosp. Dist., 965 S.W.2d at 502. The court explained that an employee without a formal
agreement with his employer cannot construct a contract “out of indefinite comments,
encouragements, or assurances.” Id. 
      Similarly, in the instant case, in an attempt to circumvent the employment at will doctrine,
Thompson has attempted to construct a promise of employment until retirement without
termination except for good cause from a variety of statements which were made to him between
his initial hiring and termination. For example, when Thompson was hired he testified that he
understood from the policies and procedures of the company


 that an individual could only be fired
for cause.


 Thompson’s testimony also discussed his statement made at the time of his hiring that
he would give the company “10 good years” but then he wanted “out” in order to retire, and the
individual who hired Thompson said that sounded “like a winner.” Additionally, Thompson and
other employees testified that employees of CTAS were always terminated for good cause pursuant
to the company’s written termination policy through a set internal procedure.


 
      Moreover, Thompson considers his December 1990 evaluation to contain a promise of
employment until retirement. On Thompson’s evaluation, his supervisor wrote, “Medical
condition of employee will determine future position at CTAS until retirement.” Furthermore,
while Thompson was meeting with his supervisor about his evaluation, Thompson saw that on the
“Potential and Replacements Staff Planning Information” form, which was not supposed to be
shown to the employee, his supervisor had listed “[c]onsultant until retirement” under the section
entitled, “Positions for which the individual should be qualified and considered during the next
five years.”


 During his testimony, Thompson also referred to be being promised work at CTAS
until the Japanese aircraft project was complete because he had been assigned to supervise the
modification process on both airplanes.



      After reviewing this evidence, we conclude that there is less than a scintilla of evidence in the
record that Thompson was promised employment until retirement with termination only for good
cause. Despite the fact that Thompson may have believed that CTAS’ employees could only be
terminated for cause based on his understanding of the company’s termination policy and from the
procedures typically used in terminations, there is no evidence in the record that CTAS ever
manifested the intent to change Thompson’s status from that of an at-will employee to an employee
who could only be terminated for cause. Similarly, after considering the statements on
Thompson’s evaluation regarding his position until retirement, Thompson’s statement when hired
that he wanted out in ten years, or his supervisor’s statements that he was to oversee the Japanese
aircraft modification project, we do not believe these indefinite comments support a finding that
Thompson was promised employment until retirement with termination only for cause. 
      Finally, we must consider Thompson’s argument that CTAS’ failure to call Dave Frank, the
vice president who assigned Thompson to a staff position following the December 1990 employee
evaluation, raises a presumption that Dave Frank’s testimony would have been adverse to CTAS,
and thus, constitutes sufficient evidence to support the jury’s verdict. See, e.g., John Deere Co.
v. May, 773 S.W.2d 369, 377 (Tex. App.—Waco 1989, writ denied) (discussing a party’s failure
to produce witnesses with whom it has a special relationship). In the instant case, we will not
presume on appeal that Dave Frank made a promise to Thompson that he could work at CTAS in
a staff position until his retirement with termination only for cause, when this fact is unsupported
by the record. Contrary to Thompson’s argument on appeal that Frank made this promise in order
to ensure that Thompson would remain with the company even though he was being demoted,
Thompson did not testify to this scenario at trial.


 At one point Thompson testified,
[Q:] What was the only thing that . . . Dave told you at the time you saw those papers
and he talked with you on December 19th?
 
[A:] That I was stepping down as department - - being relieved of my department. Mr.
Billy Bason was being assigned, and I would be a consultant to him, and my health would
determine positions at CTAS.
 
[Q:] But . . . Dave did not say that, “George, you will be a consultant until
retirement[?]”
 
[A:] He did not.

Furthermore, following Thompson’s demotion, Thompson testified that he was not given any work
until the program manager for the Japanese aircraft project sought to have Thompson assigned to
the project, and even at the request of program manager, management at CTAS was reluctant to
assign Thompson to the project.


 Thus, we will not presume Frank made promises Thompson did
not testify about nor presume Frank made these promises to keep Thompson at CTAS to work on
the aircraft modification project when the evidence adduced at trial does not support this inference. 
We therefore conclude that CTAS’ failure to call Dave Frank as a witness does not provide more
than a scintilla of evidence that Thompson was promised employment until retirement with
termination only for cause.
III. Conclusion
      Because we have concluded there is not legally-sufficient evidence in the record supporting
the jury’s promissory estoppel finding, CTAS’ first issue presented is sustained, the trial court’s
judgment awarding Thompson $172,500 is reversed, and we render judgment that Thompson take
nothing.

                                                                         BOBBY L. CUMMINGS
                                                                         Justice

Before Chief Justice Davis,
      Justice Cummings, and
      Justice Vance
Reversed and rendered
Opinion delivered and filed October 28, 1998
Do not publish