COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-214-CV


PAUL BROWN, INDIVIDUALLY                                                 APPELLANT
AND ON BEHALF OF ALL OTHER 
PERSONS SIMILARLY SITUATED 

V.

SABRE, INC. AND SABRE                                                       APPELLEES
HOLDINGS CORP., DELAWARE 
CORPORATIONS 

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY
 
------------

OPINION

------------
I. Introduction
        Appellant Paul Brown, individually and on behalf of all other persons
similarly situated (“Brown”), appeals the trial court’s grant of Defendants’
Second Motion for Summary Judgment and in a single issue globally asserts
that the trial court erred by granting summary judgment. We affirm.
II. Background
        Brown was an employee of Sabre, Inc. when his employer sold part of its
operations to Electronic Data Systems Corporation (“EDS”) in 2001. It is
undisputed that Brown was an at-will employee. All 4,200 Sabre employees
whose jobs were to be eliminated were offered positions with EDS. Brown and
the others affected were given the option to accept a position with EDS, which
was referred to as being “transitioned” to EDS, or to find other employment. 
On March 29, 2001, Brown accepted a position to begin work for EDS in July
2001, but he continued to work at Sabre in the interim. 
        Sabre’s vacation policy was that vacation that was earned during a year
could be taken only in the following year. For the year 2000, Brown was
credited with twenty-five vacation days to be taken in 2001. Generally, the
company expected employees to use their entire vacation and could not carry
over days to the next year. Employees were not entitled to payment for unused
vacation days. Another vacation policy stated that “[i]f you leave the company,
you will be paid for any earned but unused vacation days, as long as you
provide two weeks[‘] resignation notice.” Brown was aware of the policy but
did not resign or give two weeks’ resignation notice. In response to confusion
on the part of some employees regarding how their accrued vacation to be
taken in the year 2001 would be treated as a result of the EDS transition, on
May 23, 2001 Sabre stated in a memo to “All Employees Transitioning to EDS”
that “[t]he purpose of this memorandum is to assure you that Sabre is keeping
you whole in respect to your Sabre vacation—that is part of the contract
between Sabre and EDS.” 
        On that same day, two months after Brown had accepted employment
with EDS but while he was still working at Sabre, Sabre allegedly changed the
vacation policy by stating that employees would not be paid for any vacation
that would be honored or assumed by a “Successor or Affiliate,” that is, EDS,
“except as required by law.” Shortly thereafter, he received his final paycheck
from Sabre, which included payment for two and one-half weeks of vacation
that had accrued in 2001 for use in 2002. However, he discovered that he did
not get paid for the sixteen days that represented the amount of accrued
vacation that he had earned in 2000 to be taken in 2001 but which he had not
yet taken prior to his transition to EDS.
        Although disputed by Sabre, Brown asserts that when he left Sabre and
began working for EDS, EDS did not offer him his Sabre accrued vacation time
or pay him for the time equivalent of the earned vacation time, as had been
represented by Sabre to be a part of the Sabre/EDS contract. As a result, he
filed suit against Sabre under a breach of contract theory. Prior to filing suit,
Brown contacted the U.S. Department of Labor to inquire about his right to
receive vacation pay for accrued but unused vacation but was told that the
Department does not get involved in such matters. He also filed a complaint
with the Texas Workforce Commission, seeking payment for accrued vacation
time, but did not appeal from its determination that
[t]he law provides that claims for [vacation] can be enforced as
unpaid wages only when the amounts are owed under a written
agreement with the employer or under a written policy of the
employer. The employer’s written policy or written agreement did
not provide for cash payments for unused leave upon separation
from employment. 

        After initiation of the lawsuit and relevant discovery, Sabre filed a
traditional motion for summary judgment, styled “Defendant’s Second Motion
for Summary Judgment and Supporting Brief,” on the basis that as an at-will
employee, Brown had no contract with Sabre as a matter of law, and thus there
could be no breach of contract. Simply put, no contract—no breach. This
appeal resulted.
III. Standard of Review
        In a summary judgment case, the issue on appeal is whether the movant
met his summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979). The burden of proof is on the movant, and all doubts about
the existence of a genuine issue of material fact are resolved against the
movant. S.W. Elec. Power Co., 73 S.W.3d at 215; Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore,
we must view the evidence and its reasonable inferences in the light most
favorable to the nonmovant. Great Am., 391 S.W.2d at 47.
        In deciding whether there is a material fact issue precluding summary
judgment, all conflicts in the evidence are disregarded and the evidence
favorable to the nonmovant is accepted as true. Harwell v. State Farm Mut.
Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). Evidence that favors the
movant's position will not be considered unless it is uncontroverted. Great
Am., 391 S.W.2d at 47. A defendant is entitled to summary judgment if the
summary judgment evidence establishes, as a matter of law, that at least one
element of a plaintiff’s cause of action cannot be established. Elliott-Williams
Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). The defendant as movant must
present the summary judgment evidence that negates an element of the
plaintiff’s claim. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995). Once the defendant produces sufficient evidence to establish the right
to summary judgment, the burden shifts to the plaintiff to come forward with
competent controverting evidence raising a genuine issue of material fact with
regard to the element challenged by the defendant. Id. 
IV. At-Will Employment
A. Historical Development
        A version of the employment at-will doctrine can be traced back at least
as far as fifteenth century England and the Statute of Laborers Act, which
provided that if any employee was hired for an indefinite period of time, he was
presumed to be hired for one year and could not be terminated during that year
except for reasonable cause. Richard R. Carson, Texas Employment Law § 201
(1993). The doctrine emerged in the United States in Hathaway v. Bennett, 10
N.Y. 108 (1854), in which a New York court found in favor of an employer who
fired an employee without advance notice. “Wood’s Rule,” attributed to
Professor Horus Wood, is also often cited as an original source of the
employment at-will doctrine. In his 1877 paper, Treatise on the Law of Master
and Servant, he stated what would later be known as Wood’s Rule: 
When the continuance of the term of service by the contract of
hiring is in any manner left discretionary with either party, either
may put an end thereto at any time . . . . With us the rule is
inflexible that a general or indefinite hiring is primafacie a hiring at
will, and if the servant seeks to make it out a yearly hiring, the
burden is upon him to establish it by proof.

H.G. Wood, Treatise on the Law of Master & Servant § 272 (1877). 
        The genesis of the doctrine in Texas can be traced to the Texas Supreme
Court ruling in East Line and Red River Railroad Company v. Scott, wherein the
court, relying on various authorities including Wood’s Rule, stated that “[i]t is
very generally, if not uniformly held, when the term of service is left to the
discretion of either party, or the term left indefinite, or determinable by either
party, that either may put an end to it at will, and so without cause.” 72 Tex.
70, 10 S.W. 99, 102 (Tex. 1888). This general doctrine is still applicable
today. “The long-standing rule in Texas provides for employment at will,
terminable at any time by either party, with or without cause, absent an
express agreement to the contrary.” Fed. Express Corp. v. Dutschmann, 846
S.W.2d 282, 283 (Tex. 1993). Any modification of an employee’s at-will
employment status must be based on expressed, rather than implied,
agreements that are clear and specific. Montgomery County Hosp. Dist. v.
Brown, 965 S.W.2d 501, 503 (Tex. 1998). Further, it is the employee’s
burden to prove a contract existed with the employer. See Massey v. Houston
Baptist Univ., 902 S.W.2d 81, 83 (Tex. App.—Houston [1st Dist.] 1995, writ
denied). 
B. Employee Handbooks/Policy Manuals and Disclaimers
The long-standing rule in Texas is that an employee without a
written employment contract is an employee-at-will, and the
employment relationship is terminable at any time by either party,
with or without cause. . . . In numerous cases, discharged
employees have attempted to recover for breach of contract by
alleging that their employers’ personnel manuals contained
enforceable promises altering the at-will relationship. . . . Texas
courts have generally rejected this theory, particularly where a
specific disclaimer in the employee handbook warns the employee
that the manual is intended to provide guidelines only, and does not
create contractual rights. 

Vida v. El Paso Employees’ Fed. Credit Union, 885 S.W.2d 177, 180-81 (Tex.
App.—El Paso 1994, no writ). As a general rule employee handbooks and
policy manuals constitute general guidelines in the employer/employee
relationship and do not create implied contracts between the employer and
employee. Ortiz v. United Servs. Auto. Ass’n, No. 04-99-00345-CV, slip op.
at 3, 2000 Tex. App. LEXIS 7898, at *6-7, 10 (Tex. App.—San Antonio Nov.
2, 2000, no pet.) (not designated for publication) (noting that an employee
manual did not create an employment contract when there was nothing in the
manual that limited the employer’s right to terminate employment); Shell Oil Co.
v. Humphrey, 880 S.W.2d 170, 176 (Tex. App.—Houston [14th Dist.] 1994,
writ denied) (holding no implied contract when employee handbook did not limit
employer’s right to terminate employment); Day & Zimmerman, Inc. v.
Hartridge, 831 S.W.2d 65, 69 (Tex. App.—Texarkana 1992, writ denied)
(stating that statement of company policy, without an express agreement, did
not create contractual rights in employment); Salazar v. Amigos Del Valle, Inc.,
754 S.W.2d 410, 413 (Tex. App.—Corpus Christi 1988, no writ) (finding
policies and procedures manual did not raise a fact issue as to whether an
implied agreement existed); Vallone v. Agip Petroleum Co., 705 S.W.2d 757,
759 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.) (holding that if the 
only agreement alleged is an implied agreement based on a policy manual, there
is no alleged basis upon which the term of employment could be anything other
than at-will); Reynolds Mfg. Co. v. Mendoza, 644 S.W.2d 536, 539 (Tex.
App.—Corpus Christi 1982, no writ) (stating that handbook was a general
guideline that presented no evidence of any express agreement limiting the 
discharge of employees); see also Totman v. Control Data Corp., 707 S.W.2d
739, 744 (Tex. App.—Fort Worth 1986, no writ) (finding the mere presence of
an employee handbook, without introducing it as evidence, does not change
nature of an at-will employment relationship). There is a “generalized rejection
[by Texas courts] of the claim that employment manuals issued unilaterally by
an employer can per se constitute written employment contracts and create
specific limitations which take the cases out of the at-will doctrine.” Aiello v.
United Air Lines, Inc., 818 F.2d 1196, 1198 (5th Cir. 1987).
        This is particularly true if the handbook contains a disclaimer. “A
disclaimer in an employee handbook . . . negates any implication that a
personnel procedures manual places a restriction on the employment-at-will
relationship.” Dutschmann, 846 S.W.2d at 283; see Werden v. Nueces County
Hosp. Dist., 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.)
(concluding that the disclaimer clearly did not express an intent to create a
binding contract).
        Nevertheless, one sister court has held that an employee handbook can
become part of an oral employee contract and limit the employer’s right to
discharge an employee. Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 6 (Tex.
App.—Corpus Christi 1991, no writ), overruled on other grounds by Cain v.
Hearst Corp., 878 S.W.2d 577 (Tex. 1994). However, that case erroneously
cites as authority Berry v. Doctor’s Health Facilities, 715 S.W.2d 60, 61 (Tex.
App.—Dallas 1986, no writ). The Berry case does not stand for that
proposition and does not make that statement, but rather holds that “the record
is devoid of any facts that would elevate the employee handbook beyond its
self-proclaimed status of a revocable general guideline,” emphasizing the
disclaimer that indicated that the handbook did not constitute the contract. Id.
at 61-62. Even so, the Wilhite court goes on to note that “[w]hen the
handbook contains an express disclaimer that the handbook in no way
constitutes an employment contract, it does not . . . .” 812 S.W.2d at 6.
        Nevertheless, under very limited circumstances, employee handbooks or
policy manuals have been held by some courts to contractually modify the at-will employment relationship or form otherwise enforceable promises. See
Paniagua v. City of Galveston, Tex., 995 F.2d 1310, 1314-15 (5th Cir. 1993)
(holding that a magistrate’s finding was “not clearly erroneous” when he
determined the City of Galveston Personnel Rules and Regulations, which stated
that employees on stand-by would be paid in a certain manner, required
payment for stand-by time to Mr. Paniagua); Aiello, 818 F.2d at 1198-1201
(finding that there existed a written or oral agreement, or written agreement
with oral additions, which contained a specific contract with binding disciplinary
standards and disciplinary procedures, that is, a manual contained a specific,
detailed employer obligation to discharge only for just cause); Vida, 885 S.W.2d
at 181 (noting that the at-will relationship may be modified when a handbook,
without a disclaimer, “specifically and expressly curtails the employer’s right to
terminate the employee . . . restrict[s] the at-will relationship in a meaningful
and special way [and] contain[s] a specific contractual term altering at-will
status”); see also Stiver v. Tex. Instruments, Inc., 750 S.W.2d 843, 846 (Tex.
App.—Houston [14th Dist.] 1988, no writ); Benoit v. Polsar Gulf Coast, Inc.,
728 S.W.2d 403, 406 (Tex. App.—Beaumont 1987, writ ref’d n.r.e.), (adopting
the “meaningful and special way” approach). Indeed, this court has held that
“[a]lthough an employee handbook is not a contract that will alter the at-will
nature of the employment relationship, a provision in an employee manual may
create enforceable rights if the provision does not alter the at-will nature of the
employer relationship.” Burlington N. R.R. Co. v. Akpan, 943 S.W.2d 48, 52
(Tex. App.—Fort Worth 1996, no writ) (holding that a written policy invoking
arbitration for certain labor disputes would be enforced, noting that Texas
courts strongly favor arbitration and courts usually indulge every reasonable
presumption in favor of arbitration) (citing E-Z Mart Stores, Inc. v. Hale, 883
S.W.2d 695, 699 (Tex. App.—Texarkana 1994, writ denied)). It is noteworthy
that this case is silent on the factual issue of employee handbooks or manuals,
as well as disclaimers.
        In E-Z Mart, the court found an implied-in-fact contract existed through
the posting of a notice stating in part “all E-Z Mart employees are covered by
Workmen’s Compensation Ins. through E-Z Mart, Inc. Self Insurance Program. 
The Company has assumed the role of your Workermen’s Comp. Insurance
Company.” 883 S.W.2d at 699. The court noted that a contract implied-in-fact arises from the acts and conduct of the parties, and it was implied from the
facts and circumstances that there was a mutual intention to contract. Id. The
employee continued to work for E-Z Mart after the posting of the notice, and
the court found that the benefit of the service to E-Z Mart constituted her
consideration, the program being another form of compensation for her
services. Id. Hence the court found that, under those particular circumstances,
there was a contractual obligation outside of the employment at-will status of
the employee. Id. Further, even outside of the employee manual, “[a]t-will
employees may contract with their employers on any matter except those
which would limit the ability of either employer or employee to terminate the
employment at will.” Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642,
644 (Tex. 1994).
V. Vacation Pay
        Not surprisingly, the issue of vacation pay has been litigated previously,
apparently originating in 1968 in the case of Interstate Hosts, Inc. v.
Thompson, 435 S.W.2d 957, 958-59 (Tex. Civ. App.—Dallas 1968, no writ). 
While the question presented appears to be one of first impression
in Texas, its resolution seems quite simple. Any vested interest or
right acquired concerning vacation pay must be determined from
the terms of the contract of employment, either expressed or
implied. [Here] there was no written contract of employment . . .
[and we find] no basis in law or in fact for the recovery of the
vacation rights.

Id. at 958. One sister court has determined that an alleged contract to pay for
unused vacation time which stated that the plan was voluntary and “may be
terminated or modified at any time” did not create a contractual obligation to
pay for unused vacation, noting cases holding that no contract was formed
where an employer retained the right to amend the handbook, and a handbook
that could be unilaterally amended or withdrawn did not constitute a contract. 
Ryan v. Superior Oil Co., 813 S.W.2d 594, 596 (Tex. App.—Houston [14th
Dist.] 1991, writ denied). Also in the case of Chester v. Jones, the court found
that if an employee had the ability to take vacation prior to being discharged but
did not do so, in the absence of contractual language showing intent to pay a
discharged associate for unused vacation time, such payment was unnecessary.
386 S.W.2d 544 (Tex. Civ. App.—Tyler 1965, no writ), cause dism’d, 391
S.W.2d 722 (Tex. 1965). But see Hamby Co. v. Palmer, 631 S.W.2d 589,
590-91 (Tex. App.—Amarillo 1982, no writ) (upholding the employee’s right to
payment where a discharged employee was told he would be paid for accrued
but unused vacation time, and the company policy manual confirmed the oral
statement but was silent in the event the employee was terminated).
VI. Brown’s Theory of Recovery
        In Plaintiff’s Original Petition, the live pleading at the time of filing of
Defendant’s Second Motion for Summary Judgment, plaintiff’s sole cause of
action was for breach of contract. Specifically, Brown asserted that “[w]hen
Plaintiff and Class Members were transitioned from Sabre to EDS pursuant to
the EDS/Sabre acquisition, Sabre refused to pay them [in 2001] for the accrued
unused vacation they earned in 2000 and such refusal constitutes a breach of
contract.” Brown’s argument is succinctly articulated in its briefing to this
court: “Sabre, in its employee handbook, had promised Brown that he had
earned the vacation and would be paid for it upon his leaving the company. 
Sabre breached that promise and did not pay Brown for the vacation hours that
he had earned prior to the year 2001.” In order for Brown to prevail on his
claim for breach of contract, he must demonstrate that a binding contract
existed, that it was breached by Sabre, and that he suffered damages caused
by the breach, Ryan, 813 S.W.2d at 596 As articulated by Sabre in its second
motion for summary judgment, “[t]he sole issue before this Court on the instant
Motion is whether a valid contract exists between Plaintiff [Brown] and Sabre
for the vacation benefits Plaintiff allegedly ‘earned’ in 2000.” 
        The elements required for the formation of a valid contract are well
known. They include an offer, an acceptance, a meeting of the minds, each
party’s conceding to the terms, and an execution and delivery of the contract
with the intent that it be mutual and binding. Primes Prods. Inc. v. S.S.I.
Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied). Therefore, we will examine the employee handbook and surrounding
circumstances and determine if a valid contract existed between Sabre and
Brown regarding Sabre’s vacation policy and vacation pay.
VII. AnalysisLest we lose sight of the mountain while traversing the forest of history
and legal development, the macroscopic view of this case is that of an
employee who does not have a written employment agreement; who relies on
an employee manual that Texas law disfavors as forming contractual
obligations, particularly when, as here, a specific disclaimer is involved; and
who relies on a single memorandum which he says changed a policy—a policy
that could be amended by the very manual on which he relies.
        Looking to the facts of this case, Sabre’s employee handbook contained
the following disclaimer:
These policies apply to all employees of Sabre. The company
reserves the right to alter, amend, modify[,] or terminate these
policies at any time in its sole discretion. This Guide does not
guarantee continued employment, nor does it represent an
employment contract, express or implied.
 
Employment at Sabre is considered to be “employment-at-will.” 
This means that either party may terminate the relationship at any
time, with or without notice. Only the Chief Executive Officer
(CEO) of Sabre has any authority to enter any agreement for any
specified period of time, or to make any agreement contrary to this
policy. 

This disclaimer demonstrates Sabre’s clear intent not to create any binding
contractual rights through its employee handbook. Werden, 28 S.W.3d at 651
(citing Gamble v. Gregg County, 932 S.W.2d 253, 255 (Tex. App.—Texarkana
1996, no writ)). As discussed above, most Texas courts have held that if there
is an “explicit disclaimer” in a policy or manual of an at-will employee, no
contract is formed. Dutschmann, 846 S.W.2d at 283; Werden, 28 S.W.3d at
649. Brown argues, in an attempt to distinguish his case from the applicable
case law, that the vacation policy contained in the handbook was not voluntary
and expressly provided that vacation is “earned” monthly and “credited”
annually. This, however, ignores the undisputed fact that the disclaimer applied
to the handbook as a whole, and therefore all of the vacation policies were
voluntary and could be altered, amended, modified, or terminated by Sabre at
any time. It also ignores the fact that the specific issue of payment for unused
time is a policy decision on how to pay, not whether to pay. Brown earned his
vacation time; he did not “earn” the right to be paid for unused vacation time
if he resigned (which he did not). This is a policy which could be, and was,
modified by Sabre. Brown also argues that the Memorandum to Transitioning
Employees confirmed Sabre’s obligation to pay accrued vacation. Even when
viewing this memorandum favorably to Brown, the vacation policy remained
voluntary, and no breach occurred when Sabre did not pay Brown for the
unused accrued vacation. See Ryan, 813 S.W.2d at 596 (stating that letters
and memoranda did not create a binding contract or modify a vacation plan’s
voluntary nature). Any contract existed between Sabre and EDS, not between
Sabre and Brown. The memorandum was merely explanatory and did not
modify the voluntary nature of the policy. Id. We hold that no contract existed
between Sabre and Brown, and accordingly, we overrule Brown’s single issue.
VIII. Conclusion
        Having overruled Brown’s single issue, we affirm the judgment of the trial
court.


                                                                  BOB MCCOY
                                                                  JUSTICE

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. concurs without opinion.

DELIVERED: August 31, 2005