TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

 

 NO. 03-01-00507-CV

 

 William A. MacFarlane, Appellant

 v.

Robert S. Rickard and RSRP Investments, a Texas Limited Partnership, Appellees



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

 NO. GN002094, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING



 Appellant William A. MacFarlane appeals a declaratory judgment in favor of Robert S.
Rickard and RSRP Investments. In six issues, MacFarlane contends that the district court erred
by: (1) improperly admitting parol evidence and (2) failing to abate the cause pending the joinder
of an indispensable party. We will affirm the judgment of the district court.

 BACKGROUND

 In 1992, MacFarlane and Rickard formed a partnership called "Even Par" and began
participating in real estate development. Even Par purchased a development known as the Villas
on Lake Travis and renovated existing condominiums on the west portion of the property. Later,
Even Par joined with JMC Homes to form The Villas by Renaissance, Ltd. ("VBR") and began
construction on a 154 unit condominium project (the "Project") on the east side of the property. 
MacFarlane, Rickard, and JMC formed Tuscany Properties ("Tuscany") to act as the general
partner for VBR. The VBR Limited Partners included MacFarlane individually and also in his
capacity as trustee for the MacFarlane Children's Trust, as well as Rickard individually and as
trustee for a family trust. The record reflects that MacFarlane's greater interest was as trustee. 
The Project eventually encountered problems such as leaking units and budget overruns.

 In April 1999, MacFarlane complained to Dan Nelson, the attorney for VBR, that he was
dissatisfied with Rickard's management of the partnership. On April 29, Nelson held a meeting
to mediate the dispute between MacFarlane and Rickard. On May 5, the parties entered into an
agreement ("the Agreement") entitled "Release and Settlement Agreement" addressing
MacFarlane's concerns and outlining their respective obligations. In the Agreement, MacFarlane
and Rickard stipulated to the following facts: (1) they were limited partners of VBR, the
developer of the Project; (2) they were, individually, shareholders, directors and officers of
Tuscany, the general partner of VBR; (3) VBR had previously executed a real estate lien note for
$2,375,000 payable to RSRP (the "RSRP Note") and secured by liens encumbering a one-half
interest in certain condominium units in the Project; and (4) VBR had previously executed a real
estate lien note for $2,375,000 payable to MacFarlane (the "MacFarlane Note") and secured by
liens encumbering a one-half interest in certain condominium units in the Project.

 The Agreement provided that (1) VBR would pay $100,000 in construction funds to finish
two condominium units at the Project ("the Sopre Vita Units"); (2) VBR would convey the Sopre
Vita Units to MacFarlane for a total consideration of $1,150,000, and this consideration would
apply as a reduction in the balance of the MacFarlane Note; and (3) VBR would make a
prepayment of the MacFarlane Note of $100,000 that would be applied as a credit against the
principal on that Note. The Agreement acknowledged that subsequent to the conveyance of the
Sopre Vita Units and the $100,000 prepayment, the balance on the MacFarlane Note would be
significantly lower than the balance on the RSRP Note. Accordingly, the Agreement prescribed
that any additional payments from VBR as a result of the sale of the remaining condominium
units would be applied to reduce the balance on the RSRP Note until the balances on the Notes
were again equal. Any further payments would then be applied to the Notes equally.

 The Agreement also included a note equalization provision providing that if the balance on
the RSRP Note was more than that on the MacFarlane Note upon the conveyance of the last unit
in the project, then MacFarlane would agree to pay to RSRP, upon the conveyance of the Sopre
Vita Units, the amount that the balance of the RSRP Note exceeded the balance of the
MacFarlane Note. The Agreement's signature page includes Rickard's signature as an individual,
as president of RSRP, and as vice president of Tuscany. MacFarlane's signature appears without
specifying the capacity in which he is executing the Agreement.

 In July 1999, Rickard informed MacFarlane that the partnership had insufficient assets to
pay its debts. At that time, MacFarlane informed Rickard that he did not intend to comply with
the Agreement. On January 12, 2001, Rickard filed his first amended original petition against
MacFarlane, individually and as trustee for his children's trust, requesting "a declaratory
judgment . . . that the Agreement is in all respects binding upon and enforceable against
MacFarlane in his individual capacity and as trustee." On April 18, 2001, the district court
rendered judgment on a jury verdict declaring that "the Release and Settlement Agreement . . . is
in all respects binding upon and enforceable against [MacFarlane] in his individual capacity and
as Trustee of the MacFarlane 1995 Children's Trust . . . ." MacFarlane appeals the judgment.

 DISCUSSION A major issue in the trial court concerned whether the
Agreement included and bound the MacFarlane Family Trust in light of the fact that the
Agreement was signed by William A. MacFarlane without designating his capacity. MacFarlane
was sued individually and in his capacity as trustee. The trial court admitted parol evidence
which showed MacFarlane executed the Agreement in both his individual and representative
capacities, and the judgment binds him as both an individual and as trustee. His notice of appeal
is brought merely as "William MacFarlane."

Notice of Appeal

 Appellees contend that because MacFarlane's notice of appeal does not include
MacFarlane as trustee for his children's trust, he has failed to perfect his appeal to this Court in
his representative capacity. Appellees' first amended original petition "complain[s] of WILLIAM
A. MACFARLANE, individually and as trustee of The MacFarlane 1995 Children's Trust." 
While MacFarlane answered in both his individual and representative capacities, his motion for
judgment non obstante verdicto and, alternatively, motion for new trial and clarification of
judgment, is not asserted on behalf of himself as trustee. Likewise, MacFarlane's notice of
appeal is couched in singular terms: "NOW COMES William A. MacFarlane, Defendant in the
above referenced cause, and files this Notice of Appeal, and for such would show the court as
follows: . . . Defendant William A. MacFarlane files this Notice of Appeal to the 200th District
Court of Appeals at Austin, Travis County, Texas."

 The district court's final judgment was signed April 18, 2001. Because MacFarlane filed a
motion for new trial, he had ninety days from April 18 to file his notice of appeal, or until July
18, 2001. MacFarlane filed his notice of appeal on July 17, 2001.

 We are faced with a unique situation. Rickard claimed below that MacFarlane's signature
on the Agreement was enough to bind him both individually and as trustee, a fact MacFarlane
disputed. Nevertheless, the trial court rendered judgment against him in both capacities. Yet
MacFarlane filed his notice of appeal in his name alone. Now, Rickard contends that the notice
does not perfect an appeal as trustee, an argument to which MacFarlane does not respond. On
the surface, it would seem the results of the two situations should be the same. However, the
trial court admitted parol evidence below and the jury found that MacFarlane acted as trustee
with regard to the Agreement. That finding and the judgment do not relieve MacFarlane of filing
a proper notice in order to appeal in both capacities.

 Despite Rickard's raising this issue in appellees' brief, MacFarlane has not filed an
amended notice of appeal, a motion complying with Texas Rule of Appellate Procedure 10.5(b),
or a motion for an extension of time to perfect his appeal in his representative capacity. See Tex.
R. App. P. 26.3. MacFarlane in his individual capacity is, in law, not the same person as
MacFarlane in his capacity as trustee of his children's trust. See Elizondo v. Texas Natural Res.
Conservation Comm'n, 974 S.W.2d 928, 931 (Tex. App. Austin 1998, no pet.) (holding that
because appellant did not perfect appeal in representative capacity, appellant was only before
court in individual capacity). Accordingly, because MacFarlane did not perfect an appeal in his
representative capacity, the only appellant before this Court is MacFarlane in his individual
capacity. See id. Therefore, we dismiss MacFarlane's appeal as it relates to the judgment against
him as trustee of his children's trust. See Tex. R. App. 25.1(c); see also Velasquez v. Harrison,
934 S.W.2d 767, 770 (Tex. App. Houston [1st Dist.] 1996, no writ) (holding when appellant fails
to file timely perfecting instrument or seek extension of time to file perfecting instrument
appellate court must dismiss cause for lack of jurisdiction).

Parol Evidence

 MacFarlane's primary contention on appeal complains that the district court abused its
discretion by admitting parol evidence at trial. Specifically, MacFarlane complains that the
district court erroneously admitted evidence that he executed the Agreement in a representative
capacity as trustee for his children's trust in addition to his individual capacity. MacFarlane
contends that such evidence was admissible only upon a finding that the Agreement was
ambiguous, and that because his signature on the Agreement does not specify a representative
capacity, no ambiguity could be ascertained from within the four corners of the document. This
issue goes only to the judgment against the MacFarlane Family Trust. In light of our holding that
MacFarlane has not appealed in his representative capacity on behalf of the trust, we overrule this
issue.

 In any event, even assuming the trust's complaints are properly before us, the admission or
exclusion of evidence is committed to the trial court's sound discretion. See City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it acts in
an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). This Court may
not reverse for abuse of discretion merely because we may disagree with the decision of the trial
court. Id. at 242.

 A party seeking to reverse a judgment based on the admission or exclusion of evidence
must show that the evidence was erroneously admitted or excluded and that the error probably
caused an improper judgment to be rendered. See City of Brownsville, 897 S.W.2d at 753; see
also Tex. R. App. P. 44.1(a)(1). A successful challenge to evidentiary rulings usually requires
the complaining party to show that the judgment turns on the particular evidence excluded or
admitted. See City of Brownsville, 897 S.W.2d. at 753-54. If error was committed in this case,
we must then examine the entire record to determine if the judgment was controlled by the
evidence that should have been excluded. See Gee v. Liberty Mut. Fire. Ins. Co., 765 S.W.2d
394, 396 (Tex. 1989).

 The record reflects that before voir dire MacFarlane requested a ruling prohibiting the
parties from proffering evidence as to the parties' intent in signing the Agreement: 

 I do not want any evidence parol evidence or extraneous evidence from any source that
somehow anybody believed that the MacFarlane Children's Trust was somehow a party to this
agreement . . . . I don't think the jury should hear evidence from any source as to the intent of
the parties or anything that varies or changes the terms of that express written agreement.

The court never ruled on this request, but appellees agreed not to raise the issue during voir dire. 

 After voir dire but on the same day of trial, during Rickard's direct examination, the record
reflects his testimony that MacFarlane planned to put some of the profits from the Project into his
children's trust:

 Q. And there is a reference there about the MacFarlane Family Trust. Was there a 
discussion whether part of what he got should go to the MacFarlane Family Trust?

 [Counsel for MacFarlane]: Excuse me, Mr. Rickard. May I approach, your Honor?

 (Off the record discussion at the bench.)

 [Counsel for Rickard]: Mr. Rickard, I think the question was something like, 
 was there a discussion about part of the value that Mr. MacFarlane was
asking for here going to the MacFarlane Family Trust.

 A. Yes. There was definitely discussion about he wanted to put a good majority of the
money into the MacFarlane Family Trust.

The record does not reflect any objection to this testimony.

 The next day, before the morning session of trial, Rickard raised the issue again to the
court in anticipation of MacFarlane's testimony. Specifically, Rickard requested "that the Court
allow us to proceed and that we be released from the informal understanding we had prior to voir
dire." MacFarlane reurged his prior objection and argued that

 there is no execution or indication of execution by the MacFarlane Children's Trust, which
is the party they are trying to bind, nor is there any indication in the preamble or the language
of the document itself that the MacFarlane Children's Trust is in any way a party to that
agreement . . . .

MacFarlane also argued that evidence as to his capacity was admissible only upon a finding that
the Agreement was ambiguous, and that Rickard had failed to plead the issue of ambiguity. The
court allowed Rickard to amend his pleadings and present evidence concerning the involvement
of the children's trust:

 I'll grant the Motion to Amend the Second Original Petition to add the ambiguity of the
contracts. On that basis, I'll go ahead and allow the testimony as it relates to that issue of
whether MacFarlane signed or entered into the agreement in his own capacity or also wearing
the hat of the trust.

 In his brief, MacFarlane specifically complains that the following parol evidence
pertaining to the parties' intent to bind MacFarlane in his representative capacity was erroneously
admitted:

 1. MacFarlane's various capacities within the partnership included limited partner, 
trustee, shareholder of the general partner, officer and director of the general partner and
lienholder.

 2. At the April 29th meeting that led to the signing of the Settlement Agreement, 
MacFarlane had commented that all but $50,000 of his profits from the partnership would
go to the MacFarlane 1995 Children's Trust.

 3. Rickard assumed that the Settlement Agreement included the Children's Trust and
would not have signed the agreement if he had known that it did not.

 4. Dan Nelson, the partnership attorney who drafted the Settlement Agreement intended
that it include the Children's Trust.

 5. Jennifer Ramsey, who reviewed the Settlement Agreement, had written and inquired
of Nelson if he intended to make the Children's Trust a party to the Settlement Agreement.

 6. Testimony by MacFarlane that he did not intend to make the Children's Trust a party
to the Settlement Agreement.

 7. Testimony about the profits realized by MacFarlane as a result of the partnership.

 Of these seven pieces of evidence, only items 3, 4, and 6 are arguably inadmissible parol
evidence.

 [P]arole evidence is inadmissible if it will vary or contradict a writing intended by the
parties as a final and complete expression of their agreement, provided the writing is not
ambiguous that is to say, provided the writing on its face "is not fairly susceptible of more
than one legal meaning or construction."

Carr v. Christie, 970 S.W.2d 620, 623 (Tex. App. Austin 1998, pet. denied). Further, parol
evidence is not admissible for the purpose of creating an ambiguity. National Union Fire Ins. Co.
v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (holding "evidence to determine the true
meaning of the instrument" inadmissible in absence of ambiguity); see also Carr, 970 S.W.2d at
625 (holding "evidence regarding operative legal transactions" inadmissible in absence of
ambiguity).

 However, "[e]vidence of surrounding circumstances may be consulted." Sun Oil Co. v.
Madeley, 626 S.W.2d 726, 731 (Tex. 1981); City of Pinehurst v. Spooner Addition Water Co.,
432 S.W.2d 515, 519 (Tex. 1968) ("[W]e are to take the wording of the instrument, consider the
same in light of the surrounding circumstances, and apply the pertinent rules of construction
thereto and thus settle the meaning of the contract." (emphasis original)). In light of these rules
and principles, we cannot say that the district court abused its discretion in admitting items 1, 2,
5, and 7. They constitute evidence of the circumstances surrounding the execution of the
Agreement and were therefore admissible. They do not contradict the Agreement. They do not
reflect the parties' intentions concerning their capacities in executing the Agreement. They are
not evidence of the Agreement's "true meaning." They are simply statements of fact unrelated to
the parties' intentions or beliefs regarding their capacities in executing the Agreement. See Carr,
970 S.W.2d at 625 ("The parol-evidence rule operates only to exclude evidence regarding
operative legal transactions and not mere statements or recitals of fact.").

 Therefore, the only arguably inadmissible items of evidence are items 3, 4, and 6 because
they appear to reflect the parties' intentions and the meaning of the Agreement. However, once
an ambiguity becomes evident when a contract is read in the context of surrounding
circumstances, "parol evidence is admissible for the purpose of ascertaining the true intention of
the parties as expressed in the agreement." CBI Indus., 907 S.W.2d at 520.

 The record reflects that appellees first referred to the MacFarlane Children's Trust in the
context of the Agreement during Rickard's direct examination set out above, when Rickard
testified that during the April 29 meeting MacFarlane commented that "he wanted to put a good
majority of the money [from the Agreement] into the MacFarlane Family Trust." Based on this
and the other admissible evidence set out above, and in light of the signature page's failure to
designate MacFarlane's capacity in signing the Agreement, we cannot say that the district court
abused its discretion in admitting evidence of items 3, 4, and 6 to resolve any ambiguity as to
MacFarlane's capacity.

 MacFarlane also contends that the district court erred by admitting evidence that (1) the
Note equalization provisions in the Agreement incorrectly stated that MacFarlane had to pay
Rickard 100% of the difference in the Notes while their intent was that MacFarlane pay only
50% of the difference; (2) the parties agreed to waive the interest on the Notes; and (3) the
Agreement incorrectly contains a general release that "in effect released the partnership from its
obligations to MacFarlane and Rickard for sums still due" on the Notes. MacFarlane contends
that "this evidence added to the body of evidence that the jury should never have heard" and that
the district court used this testimony to reform the Agreement "even though the provisions
reformed by the trial court were clear and unambiguous on their face."

 MacFarlane provides citations to the record reflecting Rickard's testimony concerning the
Note equalization provision, the waiver of the Note interest, and the release of the partnership:

 Q. Well, let's go back one-by-one. You have got the change that you talked about on
direct testimony about the evening out agreement. It says it does not say "half", [sic] it says
"all".[sic] Do you remember that?

 A. Yes, sir, and that has been corrected, and we did file I don't know the right legal
terminology but we did file an amendment to that saying that that was a mistake and it was a
scribner's [sic] error.

 Q. I appreciate that, but what I'm saying is that the agreement, as written, and the in
essence, two of you signed, didn't really reflect the intent of the parties as to that part of the
agreement, did it?

 A. That is correct. That was a mistake.

 Q. It was just wrong?

 A. No, sir. I believe it was a mistake.

 Q. Well, sure it was a mistake; wrong. I mean, I'm not accusing anybody of doing 
anything maliciously or on purpose. It was just wrong.

 A. Yes, sir.

 Q. Okay. And the waiver of interest business is not reflected in the agreement. So, to
the extent that's the agreement, that's wrong?

 A. Yes, sir; that is correct.

 Q. And to the extent the agreement says that you have forever discharged and released all
your claims against the partnership, which is what it says, that is wrong if it means that you
discharged the partnership debt to you, which was 1.9 million dollars or whatever.

 A. Yes, sir; that is correct.

 Q. So and then you are saying that the agreement does not reflect the fact that somehow
you believe that MacFarlane Children's Trust was a party to the agreement, even though
they are never mentioned in the agreement. Is that correct?

 A. Yes, sir; that is correct.

Although MacFarlane complains of this testimony on appeal, the record reflects that not only did
MacFarlane fail to object to any of the above testimony, but this excerpt is taken from
MacFarlane's cross examination of Rickard. Accordingly, MacFarlane has not preserved this
complaint for appeal. See Tex. R. App. P. 33.1. We hold that MacFarlane cannot complain of
the admission of parol evidence to the detriment of his children's trust because he has not
appealed in that capacity. In any event, the district court did not abuse its discretion in admitting
evidence regarding MacFarlane's capacity as a party to the agreement, and MacFarlane failed to
preserve his complaint as to the "other improperly admitted parol evidence." We therefore
overrule his first, second, fourth, fifth, and sixth issues.

Joinder of Party Needed for Just Adjudication

 In his third issue, MacFarlane contends that the district court erred by rendering a judgment
without joining VBR as a party to the suit, a matter that MacFarlane did not urge until the first
day of trial. MacFarlane argues that because "the partnerships [sic] rights against Rickard and
MacFarlane were released by the Settlement Agreement, the limited partnership was a necessary
party to the suit and it was error for the trial court to permit the trial to proceed without it
present."

 While joinder of parties claiming an interest which would be affected by the judgment is
"mandatory," Texas Rule of Civil Procedure 39 provides a basis for determining whether the
action should proceed in the absence of such parties:

 A person who is subject to service of process shall be joined as a party in the action if (1)
in his absence complete relief cannot be accorded among those already parties, or (2) he
claims an interest relating to the subject of the action and is so situated that the disposition of
the action in his absence may (i) as a practical matter impair or impede his ability to protect
that interest or (ii) leave any of the persons already parties subject to a substantial risk of
incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed
interest.

Tex. R. Civ. P. 39(a). The determination of whether to proceed in the absence of such a party is
a discretionary decision for the trial court. Allegro Isle Condo. Ass'n v. Casa Allegro Corp., 28
S.W.3d 676, 678-79 (Tex. App. Corpus Christi 2000, no pet.) (citing Clear Lake City Water
Auth. v. Clear Lake Utils. Co., 549 S.W.2d 385, 389-90 (Tex. 1977); MCZ, Inc. v. Smith, 707
S.W.2d 672, 675 (Tex. App. Houston [1st Dist.] 1986, writ ref'd n.r.e.)); see also Caldwell v.
Callender Lake Prop. Owners Improvement Ass'n, 888 S.W.2d 903, 907 (Tex. App. Texarkana
1994, writ denied). A trial court abuses its discretion when it acts in an unreasonable and
arbitrary manner, or without reference to any guiding rules or principles. Downer, 701 S.W.2d at
241-42.

 MacFarlane has failed to show that the district court's refusal to join VBR as a necessary
party precluded the court from according complete relief to the parties presently in the lawsuit or
that the court abused its discretion by not delaying the trial for this purpose. Further, Section
37.006(a) of the Civil Practice and Remedies Code specifically provides that a declaration does
not prejudice the rights of any person not a party to the proceeding. Tex. Civ. Prac. & Rem.
Code Ann. § 37.006(a) (West 1997). Accordingly, MacFarlane has failed to show that the
district court's refusal to join VBR as a necessary party in this declaratory judgment action
impedes or impairs VBR's ability to protect its interests or leaves any of the parties subject to a
substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of
its claimed interest. We overrule MacFarlane's third issue.

 CONCLUSION

 We dismiss that part of MacFarlane's appeal requesting relief as a representative for his
children's trust because he failed to perfect his appeal in that capacity. We overrule his other
complaints on appeal and affirm the judgment.

 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Do Not Publish